GEORGE B. VANDERPOEL, Executor, etc., Appellant, v. FREDERICK W. LOEW, Executor, etc., et al., Respondents.

V. died seized and possessed of a large estate, most of it realty. He left four children and a grandchild, daughter of a deceased son. By his will, after directing the payment of debts and funeral expenses, he gave the residue of his estate to his executors in trust " to set apart" and invest $20,000 and apply the rent and income to the support of said grandchild, or pay the same to her during life; and to invest the residue in such manner as a majority of his children may approve, and pay over one-fourth of the income to each of his children " during the term of the respective lives of said children." The will then provided that in case of the death of " any one" of said children the executors should " set apart one undivided fourth" of said residue, or in case of the death of the grandchild should take the sum " so set apart for her benefit" and invest the same for the use of the issue of the decedent " until it or they shall respectively arrive at the age of thirty years, when

the whole of the principal so set apart, or such part thereof as they may be respectively entitled to (if the issue shall consist of more than one), shall be paid over to it or them, to have and to hold the same to it or them, to its or their sole use and behoof forever." In the event of the death of "any one" of the children or of the granchild without issue, then the will directed that the income "to which he or she would have been entitled to if living shall be divided between his surviving children and the lawful issue of any deceased child," and that "the principal shall form part of the common fund to be divided among the lawful issue" of said children "whenever such issue shall arrive at the age of thirty years as above mentioned." In an action for the construction of the will, *held*, that it was the intent of the testator to create five separate and distinct trusts, each measured by its own terms, and terminable by itself at its own date, and so there was no unlawful suspension of the power of alienation; that each of the five primary beneficiaries took an equitable estate in his or her several shares, with a remainder over to his or her issue, which vested, if not at the death of the testator, at least at the death of the life tenant, and so at the termination of one life in being; that the intent of the provision creating substituted remainders in case of the death of one or more of the life tenants without issue, was to add the primary share of the child so dying, in equal parts, to the remaining primary shares, and to subject the added proportions to precisely the same limitations as already governed the original shares; that while the result might be to add a second life in being to the period of suspension in each case, the substituted remainder of each secondary share would vest, as did the primary shares, at the death of the parent, and, therefore, at the end of two lives; that in case of the death of one child without issue and then of one another, while upon the death of the first his or her original share would go into the common fund as directed and a part of it in the form of a secondary share would be enjoyed by each of the other children during his or her life, and vest accordingly, it was not to be presumed, in the absence of express direction, that it was the testator's intent that the fractions of that secondary share, when set free by the death of the second child, should again go into the common fund, but that the fraction so added to the life estate of each of the other children would vest in each case on the death of that owner, and so become alienable at the end of two lives in being.

(Argued December 17, 1888; decided January 15, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 25, 1887, which affirmed a judgment entered upon a decision of the court on trial at Special Term.

This action was brought to obtain a judicial construction of

the will of Jacob Vanderpoel, who died in February, 1884, seized and possessed of real estate valued at about $575,000, and personalty of the value of about $25,000. The testator left four children and one grandchild, the daughter of a deceased son, his only heirs-at-law him surviving.

The material portions of the will are as follows:

"*First.* After all my lawful debts and personal expenses are paid and discharged, and after a suitable and proper monument, to cost not exceeding the sum of three thousand dollars, shall have been erected on my plot of land in Greenwood Cemetery, in the event that I shall have omitted or neglected to erect such monument during my lifetime, I give, devise and bequeath all the rest, residue and remainder of my estate of whatsoever nature or description the same may be (whether real, personal or mixed), and wheresoever situate, of which I may die seized or possessed, unto my executors herein named, to have and to hold the same in trust to and for the uses and purposes hereinafter mentioned, viz.:

"*Second.* To set apart the sum of twenty thousand dollars and invest the same in such productive real estate, or bonds and mortgages, or other first-class dividend-paying securities as they may jointly approve of, to collect and receive the rents, incomes, interest, dividends and profits of the same, and apply the same, in their discretion, to the education and support of my granddaughter Mary Elizabeth Vanderpoel, daughter of my deceased son Benjamin W. Vanderpoel, until she shall have arrived at the age of twenty-one years, and after she shall have arrived at said age, they shall pay over to her the said rents, income, interest and profits of the said sum of twenty thousand dollars, for and during the term of her natural life upon her own individual receipt, free from the control or interference of any husband she may at any time have, such payments to be made at such stated and convenient times as may seem to them meet and proper.

"*Third.* To invest all the rest, residue and remainder of my real and personal estate in such productive real estate or

bonds or mortgages or other first-class dividend-paying secur-
ities as they may jointly think fit and proper, and a majority
of my children hereinafter mentioned may approve of; to
collect and receive the rents, incomes, interest, dividends and
profits of the same and pay over one-fourth part thereof to
my daughter Mary Elizabeth Vanderpoel; one-fourth part
thereof to my daughter Julia Vanderpoel Loew; one-fourth
part thereof to my son George B. Vanderpoel, and the remain-
ing one-fourth part thereof to my son Waldron B. Vanderpoel,
such payments to be made quarter-yearly, or at such other
stated and convenient times as may be agreed on between my
said executors and my children above mentioned, and to con-
tinue during the term of the respective lives of my said children.

"*Fourth.* Whenever anyone of my said children shall depart
this life leaving lawful issue him or her surviving, then my
said executors shall set apart one undivided one-fourth part
of all the rest, residue and remainder of my estate so invested
for the benefit of my children as above mentioned, or in case
my said grandchild shall depart this life leaving lawful issue her
surviving, then they shall take the said sum of twenty thousand
dollars so set apart for her benefit, as above set forth, and shall
invest the same in the way and manner above mentioned, for
the use and benefit of the issues of such deceased child or
grandchild, and shall use and employ the rents, issues, profits
and income thereof for its or their maintenance and educa-
tion; or in case it or they shall be of a sufficient age to justify
the same, then to pay over such rents, issues and profits to it
or them, until it or they shall respectively arrive at the age of
thirty years, when the whole of the principal so set apart as
above mentioned, or such part thereof as they may be respect-
ively entitled to (if the issue shall consist of more than one),
shall be paid over to it or them; to have and to hold the same
to it or them, to its or their sole use, benefit and behoof forever.

" In the event that any one of my said children or my said
grandchild shall die without leaving any lawful issue, him or
her surviving, then the income and profits of my estate to
which he or she would have been entitled if living, shall be

divided between my surviving children above mentioned and the lawful issue of my deceased child, share and share alike, such issue to take the share to which the parent, if living, would have been entitled, and the principal shall form a part of the common fund to be divided among the lawful issue of my said children whenever such issue shall arrive at the age of thirty years, as above mentioned."

*William Man* for appellant. The possibility that the alienation or absolute ownership may be suspended beyond two lives is fatal to the trust. (*Schettler* v. *Smith*, 41 N. Y. 328, 334; *Hawley* v. *James*, 16 Wend. 120; 4 Kent Com. 282.) The trusts created by this will are in contravention of the statute. (*Bailey* v. *Bailey*, 97 N. Y. 460, 468; *Ward* v. *Ward*, 105 id. 68.) When the material provisions of a will are illegal, and cannot be separated from the other parts without defeating the testator's general scheme, the whole will be declared void, and the property disposed of as if the testator had died intestate. (*Benedict* v. *Webb*, 98 N. Y. 460; *Harris* v. *Clark*, 7 id. 242.) Where a will attempts to create a trust estate, or dispose of property for the benefit of several life beneficiaries, there must be some provision for the absolute vesting of it, in whole or in parts, upon the termination of two lives in being at the creation of the trust or estate, and this vesting must be without possibility of failure. (*Amory* v. *Lord*, 9 N. Y. 403; *Colton* v. *Fox*, 67 id. 348; *Brewer* v. *Brewer*, 11 Hun, 147; *Savage* v. *Burnham*, 17 N. Y. 561; *Harrison* v. *Harrison*, 36 id. 543; *Woodruff* v. *Cook*, 61 id. 638–641; *Purdy* v. *Haight*, 92 id. 447; *Monarque* v. *Monarque*, 80 id. 320; *Tiers* v. *Tiers*, 32 Hun, 184; *Wells* v. *Wells*, 88 N. Y. 323; *Everett* v. *Everett*, 29 id. 39; *Verplanck Will Case*, 91 id. 439; *Bingham* v. *Jones*, 25 Hun, 6; *Moore* v. *Hegeman*, 72 N. Y. 376; *Mason* v. *Jones*, 2 Barb. 229.)

*A. T. Compton* for Mary E. Vanderpoel, appellant. The power of alienation cannot be suspended by the creation of a trust. (*Everett* v. *Everett*, 29 N. Y. 71, 79; *Smith* v.

*Edwards,* 88 id. 102; *Colton* v. *Fox,* 67 id. 353; *Rice* v. *Barrett,* 102 id. 164.) The authorization of sale by the trustees does not relieve the trust from the effect of the provisions of the statute against this suspension of the power of alienation. (*Van Vechten* v. *Van Vechten,* 8 Paige, 120, 121, 124.) It has often been held that if futurity is annexed to the substance of the gift, the vesting is suspended; but where the gift is absolute and the time of payment only is postponed, the gift is not suspended, but vests at once. (*Smith* v. *Edwards,* 88 N. Y. 103, 107; *Everett* v. *Everett,* 29 id. 75; *Colton* v. *Fox,* 67 id. 353.) The life estates in the children cannot be sustained. The provisions of the will cannot be separated. (*Irving* v. *De Kay,* 9 Paige, 521, 528; *Knox* v. *Jones,* 47 N. Y. 390; *Amory* v. *Lord,* 9 id. 413, 415; *Manice* v. *Manice,* 43 id. 384.) The trusts attempted to be created by the will in question are void, because they may result in a violation of the statute. (*Hawley* v. *James,* 16 Wend. 126; *Hone* v. *Van Schaick,* 20 id. 564; *Schettler* v. *Smith,* 41 N. Y. 328; *Knox* v. *Jones,* 47 id. 397; *Ward* v. *Ward,* 105 id. 68, 74.) Where, in a will, some trusts are legal and others illegal, if they are so connected together as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated if one portion were held legal and the others illegal, * * * then all the trusts must be construed together and all must be held to be illegal, and must fall together. (*Kennedy* v. *Hay,* 105 N. Y. 137; *Benedict* v. *Webb,* 98 id. 460, 466.)

*Joseph H. Choate* for respondents. In all cases of doubt that construction should be adopted which will sustain the will without doing violence to its language. (*Post* v. *Hover,* 33 N. Y. 593, 601; *Mason* v. *Jones,* 2 Barb. 229, 243; 2 N. Y. 306; 3 id. 375; *DuBois* v. *Ray,* 35 id. 163; *In re Verplanck,* 91 id. 443; *Weeks* v. *Cornwell,* 104 id. 325, 337; *Van Nostrand* v. *Moore,* 52 id. 12; *Kiah* v. *Grenier,* 56 id. 220.) The property is to be held in trust in separate shares, and there is a separate and distinct trust as to each share. There is, there-

fore, no unlawful suspension of the power of alienation. (*In re Verplanck*, 91 N. Y. 443; *Savage* v. *Burnham*, 17 id. 561, 571; *Bingham* v. *Jones*, 25 Hun, 6; *Harrison* v. *Harrison*, 36 N. Y. 543, 548; *Mason* v. *Jones*, 2 Barb. 229, 242, 243; 2 N. Y. 306; 3 id. 375; *Phillips* v. *Davies*, 92 id. 204; *Stephenson* v. *Leslie*, 70 id. 512; *Wells* v. *Wells*, 88 id. 323, 333; *Everett* v. *Everett*, 29 id. 39; *Moore* v. *Hegeman*, 72 id. 376; *Monarque* v. *Monarque*, 80 id. 320; *Tiers* v. *Tiers*, 32 Hun, 184; 98 N. Y. 568; *Chapman* v. *Nichols*, 61 How. Pr. 275; *In re Lapham*, 37 Hun, 15.) Not only is there a trust created, in separable and distinct shares, but there is also a limitation over of a remainder in fee in each share, which vests absolutely in the issue, either upon the death of the testator or upon the birth of the issue, if they should all be born thereafter or, at any rate, upon the death of a child leaving issue him or her surviving There is, therefore, no unlawful suspension of the power of alienation. (*Savage* v. *Burnham*, 17 N. Y. 561, 571, 572; *Purdy* v. *Hayt*, 92 id. 454–456; *Taggart* v. *Murray*, 53 id. 233, 238; *Jenkins* v. *Fahey*, 73 id. 355; *Moore* v. *Lyons*, 25 Wend. 119, 144; *Baker* v. *Lorrillard*, 4 N. Y. 257, 269, 270; *Mead* v. *Mitchell*, 17 id. 210, 213; *Sheridan* v. *House*, 4 Abb. Ct. App. Dec. 218; *Moore* v. *Littel*, 41 N. Y. 66, 98; *Smith* v. *Scholtz*, 68 id. 40, 60, 61; *Nodine* v. *Greenfield*, 7 Paige, 544, 548; *Wilson* v. *White*, 109 N. Y. 59, 60, 61; 18 Abb. N. C. 29–30; *Doe* v. *Considine*, 6 Wall. 458, 475–477; *McArthur* v. *Scott*, 113 U. S. 340, 378, 379; *Hennessy* v. *Patterson*, 85 N. Y. 101; *Radley* v. *Kuhn*, 97 id. 35, 36; *Boraston's Case*, 2 Co. Rep. 19; *Gilman* v. *Reddington*, 24 N. Y. 9, 13, 14; *Harrison* v. *Harrison*, 36 id. 543, 545, 546; *Manice* v. *Manice*, 43 id. 303, 368–369, 378; *Warner* v. *Durant*, 76 id. 133, 136; 15 Hun, 450, 452; *Reed's Appeal*, 118 Pa. St. 215, 222, 223; *Hansom* v. *Graham*, 6 Ves. 239; *Davies* v. *Fisher*, 5 Beav. 201; *Patterson* v. *Ellis*, 11 Wend. 260; *Gott* v. *Cook*, 7 Paige, 521, 542; 24 Wend. 647; *Stephenson* v. *Leslie*, 70 N. Y. 512, 516; *Robert* v. *Corning*, 89 id. 240; *Loder* v. *Hatfield*, 71 id. 92; *In re*

*Verplanck,* 91 id. 243, 244; *Bushnell* v. *Carpenter,* 92 id. 270; *Moore* v. *Hegeman* 72 id. 383; *Pierson* v. *Dolman,* L. R., 3 Eq. 320; *Fox* v. *Fox,* 19 id. 286; Theobold's Law of Wills [3d ed.] 386, 387 [1st ed.] 276, 277; *Isaacson* v. *Webster,* 16 Ch. D. 47; *In re Urey,* 30 id. 507; *Burrill* v. *Sheil,* 2 Barb. 457, 471; *Finley* v. *Bent,* 95 N. Y. 264, 267; *In re Mahon,* 98 id. 372, 375, 376; *Embury* v. *Sheldon,* 68 id. 227, 234, 236; *Bruner* v. *Meigs,* 64 id. 506, 516; *Tucker* v. *Bishop,* 16 id. 402, 406; 1 R. S. 727, § 44.) Assuming that the testator actually intended to create, and has, in fact, created a further trust, in the fourth paragraph of this will, to pay over the rents, income and profits to the issue until they shall respectively arive at thirty years of age, there can be no doubt that such a trust, so far as the rule against perpetuities is concerned, is dependent upon a life in being, and is in all respects legal and valid. There is no such trust for the benefit of the issue. The shares of the issue having vested absolutely, the executors, as such, are simply directed to postpone payment thereof, paying over the income, however, meantime. (*Gilman* v. *Reddington,* 24 N. Y. 9, 13, 14; *Harrison* v. *Harrison,* 36 id. 543, 545, 546; *Savage* v. *Burnham,* 17 id. 561, 571, 572; *Morton* v. *Morton,* 8 Barb. 18, 22, 23; *Burrill* v. *Sheil,* 2 id. 457; Theobald's Law of Wills [1st ed.] 276; [3d ed.] 386; *Phillip* v. *Davies,* 92 N. Y. 199, 204; *In re Verplanck,* 91 id. 439, 443, 444; *Hawley* v. *James,* 5 Paige, 462; 16 Wend. 60; *Lang* v. *Ropke,* 5 Sandf. 363, 369; *Loder* v. *Hatfield,* 71 N. Y. 92; *DeKay* v. *Irving,* 5 Denio, 653, 654; *Stevenson* v. *Leslie,* 70 N. Y. 512, 515, 516, 517; *Robert* v. *Corning,* 89 id. 225, 241; *Manice* v. *Manice,* 43 id. 303, 369; *Weyman* v. *Ringold,* 1 Bradf. 40, 52; *Warner* v. *Durant,* 76 N. Y. 133; *Everett* v. *Everett,* 29 id. 39, 72; *Burrill* v. *Sheil,* 2 Barb. 457.) Payment of the personalty by the executors was alone postponed, and only illegal restrictions, as to management and time of division, were attempted to be imposed upon an absolute devise of so much of the property as was realty. (*Post* v. *Hover,* 33 N. Y. 593, 599, 601; *Manice* v. *Manice,* 43 id.

378; *De Kay* v. *Irving*, 5 Denio, 653, 654; *Everett* v. *Everett*, 29 N. Y. 78, 80, 96; *Smith* v. *Edwards*, 88 id. 102, 103, 105; *Robert* v. *Corning*, 89 id. 225, 237; *Gilman* v. *Reddington*, 24 id. 9, 18.; *Oxley* v. *Lane*, 35 id. 340, 345, 346; *Lovett* v. *Gillender*, Id. 620, 621, 627, 628; 44 Barb. 560; *Dorland* v. *Dorland*, 2 id. 63, 81; *Harrison* v. *Harrison*, 36 N. Y. 543, 545; *Joselyn* v. *Joselyn*, 9 Sim. 63; *Saunders* v. *Vantier*, 4 Beav. 115; *Curtiss* v. *Lukin*, 5 id. 147, 156.) Even if the court should hold that a trust is actually created in the income for the benefit of the respective issue until their arrival at thirty years of age, and that a trust was invalid, the vested remainder in fee in the issue will not be thereby affected, and will, nevertheless, take effect in possession in due course. (*Gott* v. *Cook*, 7 Paige, 521, 542, 543; 24 Wend. 641, 665, 668.) The provision contained in the latter part of the fourth clause, creating an ultimate remainder over to the surviving children and the issue of deceased children in the share of the income and principal belonging to any child dying without leaving lawful issue him or her surviving, is valid, and does not continue the trust in a share beyond the statutory limitation. (*Everett* v. *Everett*, 29 N. Y. 77, 78, 84, 90; *Oxley* v. *Lane*, 35 id. 348, 349; *Tucker* v. *Bishop*, 16 id. 406; *Stevenson* v. *Lesley*, 70 id. 512, 516; 3 Jarman on Wills [R. & T.] 8, 10; *Phillip* v. *Davies*, 92 N. Y. 199; 7 N. Y. S. R. 309.) If the court should hold that this further trust, created by the latter part of the fourth paragraph for the benefit of the survivors, is void, then that provision may be stricken out of the will, and the valid parts sustained. The court will simply declare void those trusts in shares which shall in the future, in fact, survive, such trusts to be cut off, and such shares to pass as property undisposed of, as of that time when they actually do survive, by the death of a child without issue. (*Purdy* v. *Hayt*, 92 N Y. 446, 457; *Savage* v. *Burnham*, 17 id. 561, 571, 573, 574; *Schettler* v. *Smith*, 41 id. 328; *Harrison* v. *Harrison*, 36 id. 543; *Post* v. *Hover*, 33 id. 593; *Oxley* v. *Lane*, 35 id. 349; *De Kay* v. *Irving*, 5 Denio, 646; *Ever-*

*ett* v. *Everett*, 29 N. Y. 39; *Tiers* v. *Tiers*, 98 id. 573; *Kennedy* v. *Hay*, 105 id. 134.)

*Gherardi Davis* and *William B. Rankine*, guardians *ad litem* for infant respondents. Effect is to be given to the intent of the testator, although that intent may be inartificially expressed, when it is not inconsistent with the rules of law. (*Lippin* v. *Eldred*, 2 Barb. 189; *Harrison* v. *Harrison*, 36 N. Y. 543; *Mason* v. *Jones*, 2 Barb. 229; *Post* v. *Hover*, 33 N. Y. 593; *In re Verplanck*, 91 id. 439, 443.) The provisions contained in the third clause of the will do not create an unlawful suspension of the power of alienation, there being a separate and distinct trust as to each share of the property in the clause disposed of. (3 R. S. 179, § 144; *In re Verplanck*, 91 N.Y. 439; *Savage* v. *Burnham*, 17 id. 561; *Bingham* v. *Jones*, 25 Hun, 6; *Harrison* v. *Harrison*, 36 N. Y. 593; *Stevenson* v. *Lesley*, 70 id. 512; *Wells* v. *Wells*, 38 id. 323; *Phillips* v. *Davies*, 92 id. 199; *Tiers* v. *Tiers*, 98 id. 568.) Upon the death of the parents (the testator's children), their issue take a vested interest in their respective parents' share of the testator's estate, the time of payment being postponed until the issue arrive at the age of thirty, and the interest being paid them in the meantime. (*Manice* v. *Manice*, 43 N. Y. 303, 368, 369–370; *Warner* v. *Durant*, 76 id. 133–136; *Harrison* v. *Harrison*, 76 id. 593; *Stevenson* v. *Sheil*, 2 Barb. 470–471; *Bushnell* v. *Carpenter*, 92 N. Y. 270–274; *Tucker* v. *Bishop*, 16 id. 402–405; *Morton* v. *Morton*, 8 Barb. 18; *Gilman* v. *Reddington*, 24 N. Y. 18; *Burril* v. *Sheil*, 2 Barb. 457, 470, 471; *Lang* v. *Ropke*, 5 Sandf. 363; *Stevenson* v. *Lesley*, 70 N. Y. 512; *Warner* v. *Durant*, 76 id. 133; *In re Verplanck*, 91 id. 439; *Tiers* v. *Tiers*, 98 id. 568, 572.) If such a trust were invalid, the court must hold either that the executors take this estate under a power in trust, until the issue arrive at the age of thirty, or that in any event the remainder vests in the issue and the trust is to be simply disregarded. *Gott* v. *Cook*, 7 Paige, 521; *Post* v. *Hover*, 33 N. Y. 593, 601; *Everitt* v. *Everitt*, 29 id. 39, 71.) The limitation over

to the surviving children, and the issue of a deceased child, upon the death of a child without issue contained in the last paragraph of the fourth clause of the will, is valid. (*Everett* v. *Everett*, 29 N. Y. 39, 85, 89; *Tiers* v. *Tiers*, 98 id. 568, 573.)

FINCH, J. The pivotal question in this case is the inquiry whether the testator meant to create one trust, enveloping the interests of all the beneficiaries, and holding them in its grasp until a final or ultimate division, or whether he intended to constitute five separate trusts, each to be measured by its own terms, and having its own several purpose to accomplish. It is scarcely denied that upon the first construction the limitations will prove too remote, and result in a failure of the trust, and an intestacy as to the bulk of the estate; and so we are in duty bound to reject that construction if any fair and reasonable interpretation of the testator's language enables us to save his dispositions and give his will effect.

There are some provisions of the will which tend to establish a purpose to create a single trust, and to suspend the power of alienation beyond the prescribed lives in being. These are that the whole rest and residue of the estate is given to the executors in trust without any expressed separation or division; that such residue was to be invested and kept invested with the assent of a majority of the children; that it was to remain actually undivided until the period of final distribution; that merely income was specifically given pending the arrival of that period; and that the shares of children dying without issue go into what is denominated the common fund, remaining presumably in the possession and control of the trustees until the ultimate remaindermen, respectively, reach the age of thirty years. It is undeniable that these difficulties, which have been pressed upon us with great force and ability, deserve careful study and consideration and are not to be lightly dismissed, and yet it seems to me possible to hold them not insuperable.

SICKELS — VOL. LXVII.    23

We are struck at the outset with a separation and division which the testator did make, and the reason and manner of which reflect some light upon the dispositions which follow. His estate amounted to about $600,000, a very small part of which was personalty, and he left four children and one grandchild, who was the daughter of his deceased son, Benjamin. By the will the whole residue of the property, after payment of debts and expenses and the cost of a suitable monument, is devised and bequeathed to the executors in trust. That is done by the first paragraph of the dispositions directed. The second requires the trustees to "set apart" and invest $20,000 for the benefit of the granddaughter, Mary Elizabeth, applying the income to her support and education during her minority, and thereafter paying the income to her during her natural life. It is plain that this trust was meant to be a separate and several one for the benefit of the granddaughter alone, and shows that the general devise of the whole net estate to the executors was not intended to prevent a separation of interests or conclusively indicate their union. Then follows the trust for the benefit of the four children. The direction is to invest the residue remaining, after setting apart the fund for the granddaughter, in such securities as a majority of the children may approve, and pay to each of the four one-quarter of the income annually, such payments to continue, the testator adds, "during the terms of the respective lives of my said children." The word "respective" indicates that the legacies of income are to be treated distributively, and that each child takes his or her share during his or her life. The principal is not actually separated, because the interests in its accruing income are equal. If they had been unequal, what the testator did in the case of his granddaughter where inequality existed, he would also naturally have done in the case of his children, but did not do so because their equality of interest admitted of one common form of expression, and made an actual separation of the principal needless, while yet the interests dependent upon it were several and ran each for a separate and distinct period. That explains the provision as

to investments, and the control over them of a majority of the children. The fund was to be kept together without actual division while it served to produce the four shares of income, and the discretion of the executors was put under the watch of the beneficiaries for that reason, but their shares were meant to be separate and distinct, and the trust as to each share was terminable at its own date, so that the trust as a whole ran for four different periods and in four different divisions or sections. Pausing at this stage of the will, and without noting the disposition of the remainders, it seems just and reasonable to say that the testator contemplated not one trust running for four lives, but four trusts running each for a single life:

We come now to the limitations over of the remainders. By the fourth paragraph of the will provision is made for a specified contingency, and that is, in the words of the testator, "when any *one* of my said children shall depart this life leaving lawful issue," and "in case my said grandchild shall depart this life leaving lawful issue." The reference is to each one of the five life-beneficiaries severally, and by himself or herself; and the direction is to take and invest the $20,000 already "set apart" for the grandchild, Mary Elizabeth, and to "set apart one undivided fourth part" of the invested rest and residue "for the use and benefit of the issue of *such* deceased child or grandchild" and to appropriate the income *thereof* "for its or their maintenance and education," or pay the income "to it or them until it or they shall *respectively* reach the age of thirty years, when the whole of the principal *so set apart* as above mentioned or such part *thereof* as they may be respectively entitled to, (if the issue shall consist of more than one,) shall be paid over to *it or them.*" It seems to me that I discern in this language a persistent and almost laborious effort to keep asunder the five several trusts and dispose of and terminate each by itself. An undivided fourth was to be set apart for each grandchild or group of grandchildren. Once before the testator had used the phrase, "set apart," and had meant by it a severance of Mary Elizabeth's $20,000 from the general fund. Its repetition indicates the

same purpose and intention as to the undivided fourth pro-
vided for the issue of each child, modified only by the absence
of a necessity for an actual or physical division. The interest
of that fourth so " set apart" was to go " to it or them;" to *it*
if the issue of any one child was but one; to them if such issue
should be more in number, and to each of them respectively;
and final payment to it or them was to be made of *the* prin-
cipal so set apart. There is here recognized a division of the
rest and residue into four separate and several principals, the
whole of each one of which is to go to the prescribed issue,
whether one or many. The difficulty suggested at this point
is that the separation indicated is of *undivided* fourths, show-
ing that the trust fund was to be kept together and not in
fact to be divided into four separate principals. But, unless
I misinterpret the authorities, that is not a difficulty in the
way of a severance of the trusts. (*Manice* v. *Manice*, 43
N. Y. 303.) In many cases where, as in this, income and
principal were given in equal shares, although out of one fund
kept *in solido* for convenience of investment, a severance of
the trust into its component parts has been adjudged.
(*Savage* v. *Burnham*, 17 N. Y. 561; *Stevenson* v. *Leslie*,
70 id. 512; *In re Verplanck*, 91 id. 443.) The shares and
interests are several, although the fund remains undivided.

It results thus far that each of the five primary legatees and
devisees took an equitable estate for life in his or her several
share with a vested remainder over to his or her issue. It is
not necessary to determine whether such remainders in fee
vested at the death of the testator, or in each case at the death
of the life tenant, although some interesting suggestions have
been made respecting that inquiry, and the consistency of our
rulings on the subject has been questioned. It is enough for
our present purpose that the issue of each life tenant respect-
ively took estates in remainder which vested at least upon the
death of the father or mother, respectively, and so at the term-
ination of one life in being. For, the construction that the
vesting was intended to be postponed until some one of the issue
should reach the age of thirty years, I think, cannot be success-

fully maintained. The words of the testator are words of payment implying a gift made but remaining to be fulfilled. "Shall be *paid over* to it or them" is the expression, and that is preceded by the explicit direction to set apart the share at the death of the parent for the use and benefit of the issue. That imports a gift of the share, and is strengthened by the phrase "as they may be respectively *entitled to*" occurring before the direction to pay. And, besides, the case is one in which the whole income of 'each share, from the death of the parent to the time of payment, is bequeathed to the remainder-men, a circumstance to which we have invariably given great weight as denoting an intention to vest the remainder from the time at which the income begins to accrue. (*Warner* v. *Durant*, 76 N. Y. 133 ; *Smith* v. *Edwards*, 88 id. 103·; *Bushnell* v. *Carpenter*, 92 id. 270.) Whether or not the trust continued up to the time of payment it is not necessary to consider, for, in either event, the fact would not prevent the vesting of the remainders at the death of the respective parents.. (*Embury* v. *Sheldon*, 68 N. Y. 227 ; *Robert* v. *Corning*, 89 id. 225.) I have not overlooked the presence, at the close of this fourth paragraph of the will, of the usual *habendum* clause as it appears in a deed, or the inference sought to be drawn therefrom that no estate was vested in any one of the issue until and unless he or she should attain the age of thirty years. That clause is in no manner connected with the provision for final payment which immediately precedes it. It stands in a separate sentence alone by itself. It .relates to the character of the remainders previously constituted, and stamps them as in fee. It is like, if the illustration may be pardoned, the rear guard on a march, which protects the whole army and not merely the nearest regiment.

One more contingency was provided for in the will. One or more substituted remainders were created in case one or more of the five life beneficiaries should die without issue, and so the original remainder fail to take effect; and the manner of this disposition has been the subject of extended argument. The palpable purpose of the testator was to vest

such share in the issue of the children who had such issue in the same manner as the original shares were vested, that is, severally and in due proportion. The income of the share was to be divided among the surviving children of the testator, and the issue of any deceased child, who for that purpose represented and stood in the place of its or their parent, during their respective lives; and the principal of such accrued or secondary share was to vest at their several deaths in their issue. The intention was to add the primary share of a child dying without issue in equal parts to the remaining primary shares existing and provided for, and subject the added proportions to precisely the same limitations as already governed the several original shares. The result might be to add a second life in being to the period of suspension in each case. If one died without issue and three children survived, one-third of an original share of the income would go to each of the three children for life, with several remainders over. If a second child died without issue, then one-half of an original share of income would go in the same way. And in each case the substituted remainder of each secondary share would vest as did the primary shares at the death of the parent, and therefore at the end of two lives. This result was accomplished by an easy and very natural form of expression, which saved repetition and a troublesome explanation of details, and which seems, therefore, to have been adopted. The principal of such secondary shares to go in substituted remainders was to be put in what the testator denominated the " common fund," and that expression has been strongly relied upon by the appellants. At the present stage of the argument we are in no danger of mistaking its meaning. It refers simply to the actually undivided fund out of which, as we have seen, had been carved four several legal interests or primary shares. Putting the secondary shares to be disposed of into that common fund implies that they had previously got out and become freed from its control. The testator says, speaking of the primary share of a child dying without issue, " *the* principal *shall* form a part of the common fund." By " the prin-

cipal" is plainly meant the child's one-fourth, and the
direction that it shall go anew into the common fund implies,
first, that it has been withdrawn, severally and by itself, from
that fund by a death without issue necessitating some new
disposition; and second, upon the principle of "*noscitur a
sociis*," that it was to return to the common fund to be again
divided into separate shares, which has been shown to be the
law and rule of the fund. It develops the idea in testator's
mind that there had been one division of that fund into
shares, and now there must be an added one of the share fall-
ing in. The learned counsel for appellant asks, "If there had
been a previous division how could there be a common fund ?"
But we may ask, in turn, if there had been no division in
the testator's mind, how could "*the* principal" of a primary
share exist severally, and so outside of the fund as to require
to be specially again placed in it? By the phrase " common
fund," is clearly meant the aggregate of the several shares,
kept together for purposes of investment; and where a child
dies without issue, the intention is to take that share and
divide it according to the law of the fund as to the several
interests given, but keep the shares, both primary and sec-
ondary, together for convenience of investment while income
is being distributed from it. Each accrued share, as the
undivided quarter of a child dying without issue has been
denominated, vests in its several proportions as did the
original shares upon the death of the parent to whose share
its aliquot part was added as the source of income. That,
however, disposes only of the primary and secondary shares,
but not of the fractions of the latter passing from one child
to another.

As to them, a nice and critical analysis of the pos-
possibilities of the situation develops a final difficulty, which
is, perhaps, the most obstinate of all. We have said that the
original shares of one-quarter each vested in the issue of each
child upon the death of such child. It is a fair and just
inference that, whatever, once separated from the common
fund and set free by the death of a beneficiary so as to

require a new disposition, was again placed in it, would vest
at the same time and in the same manner as the original
shares whose aggregate constituted the fund, and we have
declared that to be the fact. And hence, if first one and
then a second of the children should die without issue, a part
of the income drawn by the first would go to the second;
and then to the survivors, and the vesting, it is claimed,
would occur only upon the death of one or both of the lat-
ter. There would thus prove to be a fraction of the estate
which would finally vest only at the end of three lives. The
first dying would have the income of one share for his or her
life; a part of that in the form of a secondary share would be
enjoyed by the second during his or her life, and a fraction
of that would pass to each of the survivors for his or her life,
and so three lives be interposed before the final vesting. It
is observable that this difficulty depends upon the assumption
that the testator meant, without saying it, that such a frac-
tion of a secondary share, when set free by the death of a
beneficiary, should itself be placed in the common fund, and,
therefore, vest according to its rule. I do not accede to that
assumption. The testator did not so direct. What he
replaced in the common fund and subjected to its discipline,
was, in his own words, "the principal" of that income to
which he or she "would have been entitled if living." The
case provided for is the death of a child without issue and
the disposition of that child's original share, and it is the
principal of that, of the undivided one-quarter, to be fur-
nished with a new ownership, to which, alone, the whole
attention of the testator was directed, and which only is
directed to form a part of the common fund. That original
share, and each of such original shares set free by the death
of a beneficiary without issue, do go into the common fund
and vest accordingly, but the fraction of a share which has
been twice immersed in the common fund, and each time by
an affirmative and specific direction, is not to be drowned in
it a third time upon presumption and without explicit com-
mand, and to the utter destruction of the entire trust.

Some inferences of such a purpose might be drawn by a broadening and extension of the testator's words, but they should not be strained to work an invalidity of his dispositions, and may fairly and justly be held to mean exactly what they say and nothing more. This construction is not only supported by the literal language of the will, but has quite pertinent authority in its favor. In *Everitt* v. *Everitt* (29 N. Y. 39) the trust discussed was for the benefit of the testator's three youngest daughters, and contained provisions for survivorship in the shares of one or more. The court said (p. 85): "By the final clause, upon any one dying before the time of distribution, it is *her share* which is to go to the survivor or survivors. By the strict language, therefore, upon a second death happening, it is *the proper share* of the one so dying that is to go to the sole survivor, while *nothing* is said respecting an interest which had accrued to that second deceased daughter upon the death of the first." And Judge DENIO added: "Hence I think the literal import of the language would not retain an accrued interest arising upon the death of any of them without issue within the scope of the trust." In the present case, instead of the general word "share," there is the specific description of "the principal" of the original one-quarter part. In *Oxley* v. *Lane* (35 N. Y. 349) the court said, in respect to a similar question: "This conclusion assumes that the word 'share', as used in the eighth item, relates exclusively to the portion primarily given by the will to each of the children of the testator and the two grandchildren, and does *not* include the fractions of such portions which the surviving children will acquire on the death of the first takers, respectively." In the present case what is to go into the common fund and so be subjected fairly to its rule of vesting is each primary share, "the principal" of each undivided one-quarter, and nothing else. The accrued fractions are not mentioned or described, and these vest in each case upon the death of their owner, and without waiting for the additional death of the parent. For they are included in the

general words of gift which we have already said were sufficient to vest the original shares; and, since the words of payment, as we have also said, were not effective to postpone the vesting, and so no other date is indicated, we may properly hold that they vested upon the death of the child to whose life estate these fractions had been added. It follows that such portions of testator's property vested and became alienable at the end of two lives in being, and there was no unlawful suspension of the power of alienation.

These views lead to a concurrence with the General Term.

The judgment should be affirmed, with costs of all parties payable out of the estate.

All concur, except GRAY, J., not voting.

Judgment affirmed.