ESTATE OF HENRY GOELET, DECEASED, HENRIETTE GOELET, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

HENRIETTE GOELET, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6357–66, 6358–66.   Filed December 11, 1968.

*Michael P. Oshatz*, for petitioners.
*Richard J. Mandell*, for respondent.

FEATHERSTON, *Judge:* In these consolidated cases, respondent determined deficiencies in gift tax for the year 1960 against petitioner Estate of Henry Goelet, deceased, Henriette Goelet, executrix, in the amount of $39,729.38, and against petitioner Henriette Goelet in the amount of $39,729.38. As to Henriette Goelet, respondent also determined a 25-percent addition to tax for failure to file a timely gift tax return for the year 1960 in the amount of $9,932.34.

A motion filed by petitioners to sever the issues for trial was granted. The principal issue here presented for decision is whether, under section 2511·(a) of the Internal Revenue Code of 1954,[1] the powers retained by Henry Goelet, in his capacity as one of the trustees of a trust in which he and his wife were designated as settlors, render the transfer of certain stock to the trust incomplete for gift tax purposes, and therefore not subject to gift tax.[2] If this question is answered affirmatively, we must then decide whether Henriette Goelet individually made a transfer of any part of the stock.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation and exhibits thereto are incorporated herein by this reference.

On April 13, 1961, Henry Goelet (hereinafter sometimes referred to as Henry) filed a gift tax return for 1960 with the district director of internal revenue for the Manhattan District of New York reporting his gift in trust of 110,500 shares of stock of Transnation Realty Corp. (hereinafter sometimes referred to as the corporation),[3] valued at $56,000. The face of the return disclosed the consent of his wife, Henriette Goelet (hereinafter sometimes referred to as Henriette), to have one-half of the gift considered as made by her. Henry died on August 29, 1962, and his widow, Henriette, was appointed executrix of his estate on September 7, 1962. On July 1, 1963, Henriette, as executrix of her husband's estate and on behalf of the estate, filed an amended gift tax return for 1960 with the Manhattan district director of internal revenue reflecting the gift of the 110,500 shares of stock and reporting its value at $11,050. Also on that date, she filed a gift tax return for 1960 on her own behalf reflecting one-half of the gift as reported in the estate's amended return. At the time of the filing of the petitions herein, Henriette was a legal resident of New York, N.Y.

Henry was a well-known real estate entrepreneur. In 1959 he and a business associate, Walter J. Schneider, decided to consolidate certain of their real estate interests into a single corporation and make a public offering of the stock. Pursuant to this decision, Henry and Schneider formed the corporation on January 8, 1960. On February 23, 1960, a stock certificate representing 110,500 shares of common stock

---

[1] All section· references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

[2] The other issues raised by the pleadings, relating to the value of the stock transferred and the liability of Henriette Goelet for failing to file a timely gift tax return for 1960, are not now before us. Should petitioners ultimately prevail on the issue now being considered, these other issues will be rendered moot.

[3] The name of the corporation originally was Goelet Corp.

**354**

of the corporation was issued to Henry, in his name only, in exchange for certain of his interests in various real estate ventures.

On February 24, 1960, Henry and Henriette entered into an indenture of trust between themselves as settlors and Henry, Murray H. Gershon, and David H. Feldman as trustees. Gershon was Henry's accountant and Feldman was Henry's attorney. Neither Gershon nor Feldman had any beneficial interest in the trust.

At the same time, Henry endorsed the certificate representing the 110,500 shares of stock over to the trustees. Although the shares were registered in Henry's name alone and were owned solely by him, schedule A annexed to the trust instrument recited that the transfer was made by Henry and Henriette, and they both signed the instrument as settlors.

Article First of the trust indenture specified that the corpus was to be divided into four equal parts, one for each of the four children of the settlors—Susan, aged 29 at the date of the trust; Michael, aged 22; Lynn, aged 15; and Richard, aged 12. The provisions of article First for Susan (the provisions for the other children being similar) and article Second of the trust instrument are as follows:

FIRST: The settlors have given herewith by way of gift and have transferred, assigned and conveyed to the Trustees the property described in Schedule A hereto annexed, receipt of which property the Trustees do hereby acknowledge, and the Trustees do hereby accept and agree to hold such property and such additional property as may be added thereto in accordance with the provisions of this agreement * * * .

A. To divide the corpus into four equal parts and to hold, manage, invest and reinvest the corpus and accumulated income thereof and to collect the rents, issues, dividends and profits therefrom and after the payment of all taxes, charges and other expenses of the trust, to dispose of the income and principal thereof as follows:

(a) To apply the net income and principal of one of said parts to SUSAN OGLE, daughter of the Settlors, as follows: to apply the net income or so much of the net income of the trust estate as the Trustees in their sole and absolute discretion shall determine to the welfare and comfort of SUSAN and accumulate the balance of such net income until the death of Henry Goelet, whereupon the Trustees shall pay over to SUSAN the accumulated income of the trust estate created for her and thereafter shall pay to her the net income thereof in periodic quarterly installments until SUSAN attains the age of 40, and upon SUSAN attaining the age of 40 years, the then existing principal of the trust shall be paid over to her. If said SUSAN shall have attained the age of 35 at the time of the death of Henry Goelet, one half of the then existing principal of such estate shall be paid to her. If SUSAN shall have attained the age of 40 at the time of the death of Henry Goelet, the then existing balance of such trust estate shall be paid to her absolutely and forever. In the event SUSAN shall die prior to the payment to her of all the principal of the trust created for her, the then existing principal, together with all accumulations and income and undistributed income in this trust so created for her shall be held in trust by the Trustees until the death of Henry Goelet and, upon his death, the remaining corpus and all undistributed and accumulated income shall be divided equally

and paid over to SUSAN'S issue per stirpes. If SUSAN shall die without leaving any issue, then the entire corpus of the trust created for her then remaining and all undistributed income shall be divided equally and added to the trusts herein created for Settlors' children then living: RICHARD, MICHAEL and LYNN, or the survivors of them, share and share alike, and shall follow the disposition of the trust to which it is added in all respects as to both income and principal and if they all be dead, then to those persons then living and in such proportions and amounts as such property would be distributed if the Settlors had died intestate residents of the State of New York.

\* \* \* \* \* \* \*

SECOND: The Trustees are hereby authorized at any time and from time to time in their absolute discretion to distribute to or to apply to the use of any of the Settlors' children, or any of the beneficiaries of this trust, such part of the principal of the Trust Estate created for such beneficiary, including the whole thereof, as the Trustees in their sole discretion deem desirable. Upon making such distribution or application, the Trustees in the event that they have paid to any beneficiary or beneficiaries the whole of the trust created for such beneficiary, the trust with respect to such beneficiary shall terminate and the Trustees shall be discharged of all further accountability therefor with respect to such beneficiary. In determining whether or not to distribute or apply all [or] any part of the respective trusts, as herein provided, the Trustees shall not be required to inquire into or take into account the independent resources of any of the beneficiaries and shall be guided solely by their own discretion. None of the beneficiaries shall be required to refund any such distributions or application once made. The decision of the Trustees respecting any such distributions or applications shall be final and conclusive upon all persons.

By Article Fifth, paragraph (h), the trustees were given the power to apportion expenses and charges between income and principal. Article Ninth of the instrument required the trustees to act unanimously in exercising the powers granted them under the trust. Finally, article Eleventh provided:

ELEVENTH: The Trust shall be irrevocable, and the Settlors hereby expressly acknowledge that they shall have no right of [sic] power, whether alone or in conjunction with others, in whatever capacity, to alter, amend, revoke, or terminate the trust, or any of the terms of this agreement, in whole or in part, or to designate the persons who shall possess or enjoy the trust estate, or the income therefrom. By this instrument, the Settlors intend to and do hereby relinquish absolutely and forever all possession or enjoyment of, or right to the income from, the trust estate, whether directly, indirectly or constructively, and every interest of any nature, present or future, in the trust estate.

All of the Settlors' children were alive at the date of Henry's death, but none of them had, by that time, attained the age of 35. Therefore, no beneficiary was entitled to the payment of any principal upon Henry's death.

When Henry died in 1962, the entire trust property was included in his estate, and the estate tax thereon has already been paid.

In the notices of deficiency, it was determined that the transferred stock had a value on February 24, 1960, in excess of the reported

value; it was also determined that one-half of the gift was taxable to Henry's estate and the other half to Henriette as "gifts of spouse."

The transfer to the trust of 110,500 shares of stock on February 24, 1960, was made by Henry alone. Henriette had no interest in the shares so transferred.

The transfer to the trust was not a completed gift for gift tax purposes.

OPINION

The principal question is whether Henry's transfer in trust of 110,500 shares of stock on February 24, 1960, was a completed gift within the meaning of Code section 2511(a).[4] To support their contention that the gift was incomplete, petitioners point to the powers over the trust income and corpus retained by Henry as one of the trustees, in articles First and Second of the trust instrument, quoted in part in our findings.

In this connection, article First provided that the principal was to be divided into four equal shares, one for each of the settlors' four children. Each share was described as a separate "trust estate."[5] The trustees were given power to apply the net income of each share of the trust, or so much thereof as they "in their sole and absolute discretion" should determine, to the welfare and comfort of the child for whom the share was designated; or to accumulate the income until the death of Henry, at which time they were to pay such child's share of the accumulated income over to him. If, at the time of Henry's death, the child had attained the age of 35, one-half of the then existing principal of his share of the trust estate was to be paid to him, the other half of the principal to remain in trust until he attained the age of 40, when it was to be distributed to him. If a child should die prior to the distribution of his share of the trust to him, his share was to be held in trust until Henry's death, at which time it was to be distributed as follows: To such child's issue, if any; if none, equally to the trusts for the settlors' other children then living; and if all the children were to die without issue, the property was to be distributed as if the settlors had died intestate residents of New York.

Under article Second of the instrument, the trustees were authorized "in their absolute discretion" at any time to distribute all or any part

---

[4] SEC. 2511. TRANSFERS IN GENERAL.

(a) SCOPE.—Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; * * *

[5] The parties do not dispute that the trust instrument created four separate trusts, rather than one trust. See *Vanderpoel v. Loew*, 112 N.Y. 167, 180, 19 N.E. 481, 484 (1889); *United States Trust Co. v. Commissioner*, 296 U.S. 481 (1936). For our purposes we need not decide that question.

of the principal of each child's share of the trust estate to such child or other beneficiaries thereof. Upon such a distribution the trustees were to be "discharged of all further accountability therefor with respect to such beneficiary."

We agree with petitioners that the gift was incomplete. "The essence of a gift by trust is the abandonment of control over the property put in trust." *Smith* v. *Shaughnessy*, 318 U.S. 176, 181 (1943). A transfer of property in trust is a completed gift to the extent that the settlor of the trust retains no power to change its disposition, whether for his own benefit or for the benefit of another. Sec. 25.2511–2(b), Gift Tax Regs. The settlor "is considered as himself having a power if it is exercisable by him in conjunction with any person not having a substantial adverse interest in the disposition of the transferred property or the income therefrom. A trustee, as such, is not a person having an adverse interest in the disposition of the trust property or its income." Sec. 25.2511–2(e), Gift Tax Regs. Since Henry's cotrustees had no such substantial adverse interest, we must treat the powers given to the trustees under the trust instrument as powers retained by Henry himself. Cf. *Latta* v. *Commissioner*, 212 F. 2d 164, 165–167 (C.A. 3, 1954), affirming a Memorandum Opinion of this Court, certiorari denied 348 U.S. 825 (1954).

Respondent contends that the gift in trust was complete because, he argues, Henry retained only the power "to change the manner or time of enjoyment" of the trust estate. Sec. 25.2511–2(d), Gift Tax Regs.[6] But petitioners contend, and we agree, that Henry's powers were much broader—that he retained power "to change the interests of the beneficiaries as between themselves"—with the result that the gift was incomplete for purposes of the gift tax. Sec. 25.2511–2(c), Gift Tax. Regs.[7]

Although Henry placed the trust property beyond his power to retake when he created the trust, he retained absolute control over the distribution of both the income and principal to the very date of his death. He could in his "sole and absolute discretion" accumulate

---

[6] Sec. 25.2511–2  Cessation of donor's dominion and control.

(d) A gift is not considered incomplete * * * merely because the donor reserves the power to change the manner or time of enjoyment. Thus, the creation of a trust the income of which is to be paid annually to the donee for a period of years, the corpus being distributable to him at the end of the period, and the power reserved by the donor being limited to a right to require that, instead of the income being so payable, it should be accumulated and distributed with the corpus to the donee at the termination of the period, constitutes a completed gift.

[7] Sec. 25.2511–2  Cessation of donor's dominion and control.

(c) * * * A gift is * * * incomplete if and to the extent that a reserved power gives the donor the power to name new beneficiaries or to change the interests of the beneficiaries as between themselves unless the power is a fiduciary power limited by a fixed or ascertainable standard. * * *

Respondent expressly concedes that the retained powers were not fiduciary powers subject to a definite or ascertainable standard.

or distribute all or any part of a beneficiary's share of the income, and no beneficiary had any right to any of the income before Henry died. Similarly, he could in his "absolute discretion" withhold or distribute all or part of the principal designated for a beneficiary; if he distributed all of the principal designated for a beneficiary to that extent the trust was effectively terminated, and he was thereby "discharged of all further accountability therefor with respect to such beneficiary." Thus, Henry had power to grant or withhold both principal and income as long as he lived. Only by surviving Henry could any beneficiary be assured of taking anything under the trust.

This absolute power over the distribution of both income and principal and the consequent power to terminate the trust at will involved far more than a mere "power to change the manner or time of enjoyment." Through an exercise of these retained powers, Henry could change the whole course of the trust. It lay within the ambit of his power to determine whether his children should have merely the contingent right of future ownership and enjoyment, or immediate enjoyment free of the trust. By withholding distributions of income and corpus from his children, he could thereby deny them, in the event they predeceased him, any participation whatever. On the other hand, he could vest in his own children the immediate enjoyment of the trust property which they might not otherwise have survived to receive, thereby terminating the trust and destroying the contingent interests of all except his children as primary beneficiaries. Thus, these powers could be exercised to determine not only the time of enjoyment, but also the persons who would enjoy the property.[8]

In a very real sense the trust indenture was testamentary in character. It was little more than an agreement by Henry and Henriette as to the disposition of the stock on Henry's death, subject to Henry's retained power to make his children the objects of his bounty before his death. The facts here are very similar to those in *John S. Mack*, 39 B.T.A. 220 (1939), where the Board of Tax Appeals held that creation of the trust was not a gift *in praesenti* and that a completed gift prior to the settlor's death would be consummated only if he exercised his retained powers.

The reasoning in *Commissioner* v. *Estate of Holmes*, 326 U.S. 480 (1946), an estate tax case, is apposite. There the grantor created identical trusts, to last for 15 years, for each of his three sons. He retained discretionary powers to accumulate the income and to distribute

---

[8] Of course, the focus of our present inquiry is what the donor has relinquished, not what the donee has received. In other words, whether a gift is incomplete depends not upon the characterization of the donee's interest under the niceties of future interest law, but rather upon the degree of control retained by the donor over such interest. See sec. 25.2511–2(a), Gift Tax Regs.; *Higgins* v. *Commissioner*, 129 F. 2d 237, 242 (1942), affirming 44 B.T.A. 1123 (1941), certiorari denied 317 U.S. 658 (1942).

the principal with accumulated income to the beneficiaries. In the event of the death of a son prior to such a distribution, his surviving issue was to take at age 21; if a son should die without issue, his share of the trust was to go to the other sons or their surviving issue per stripes; if all the sons should be deceased without issue, the trust estate was to be distributed to the grantor's wife, if living; if not, to her heirs at law. Rejecting an argument that the sum of the various provisions was to reserve to the decedent only a power to accelerate in time the enjoyment of the beneficial interests created by the trusts, the Supreme Court noted that none of the sons had a right to immediate enjoyment of either the income or principal, and that their enjoyment was wholly dependent upon whether they survived the grantor. The Court concluded (326 U.S. 487):

It seems obvious that one who has the power to terminate contingencies upon which the right of enjoyment is staked, so as to make certain that a beneficiary will have it who may never have come into it if the power is not exercised, has power which affects not only the time of enjoyment but also the person or persons who may enjoy the donation. More therefore is involved than mere acceleration of the time of enjoyment. The very right of enjoyment is affected, * * *

Thus, there can be no doubt, we believe, that Henry's retained powers to deny distributions to his children or to make such distributions and thereby extinguish the interests of the contingent beneficiaries involved more than the mere power to "change the manner or time of enjoyment,"[9] but were powers "to change the interests of the beneficiaries as between themselves."

We think it clear that the interests which Henry retained power to change were "interests of beneficiaries" within section 25.2511–2(c), Gift Tax Regs. In *Smith* v. *Shaughnessy*, *supra*, the settlor created a trust, providing that the income was payable to his wife for life; upon her death the principal was to revert to the settlor, if living; and if he was not living, it was to go to the wife's legatees or intestate successors. The taxpayer conceded that the wife's life estate was a taxable gift and the Commissioner conceded that no tax could be imposed upon the settlor's reversionary interest. Rejecting an argument that the contingent remainder interest was not taxable as a gift, the Supreme Court said (318 U.S. at 180) that "The language of the gift tax statute, 'property * * * real or personal, tangible or intangible,' is broad enough to include property, however conceptual or contingent." See also *Robinette* v. *Helvering*, 318 U.S. 184, 187 (1943).

---

[9] The Supreme Court explained in *Commissioner* v. *Estate of Holmes,* 326 U.S. at 486, that " 'enjoyment' and 'enjoy,' as used in these and similar statutes, are not terms of art, but connote *substantial present economic benefit* rather than technical vesting of title or estates." (Emphasis added.) Further, the Court explained (p. 486 fn. 6) that although the laws relating to estate taxes and those relating to gift taxes are not completely reciprocal, "there can be no difference in the meaning of the words 'enjoyment' and 'enjoy' as they are used in the pertinent statutory provisions respectively."

Accordingly, contingent remainder interests are "interests of beneficiaries" and Henry's retained power to change such interests prevented the gift from becoming complete.[10]

Relying upon *Smith* v. *Shaughnessy, supra,* and *Robinette* v. *Helvering, supra,* respondent argues that any change in beneficiaries would occur, not at the discretion of Henry, but as a result of the terms of the trust, triggered by an event over which Henry had no control. We do not agree. Respondent's argument is keyed to the reasoning in *Smith* v. *Shaughnessy, supra* at 181, the facts of which are summarized above, that "where the grantor has neither the form nor substance of control and never will have unless he outlives his wife, we must conclude that he has lost all 'economic control' and that the gift is complete except for the value of his reversionary interest." But in *Smith,* as in *Robinette,* the settlor's retained rights or powers came into existence only if a specified event—a condition precedent—first occurred. In *Smith,* the specified event was the grantor's surviving his wife; in *Robinette,* the events were the settlor's failure to have children and her surviving both her mother and stepfather. That is not the situation here. Henry at all times had powers over the distribution of both the income and the principal, exercisable by him at any time, and through the exercise of such powers could assure beneficiaries of enjoyment of the trust income or principal or cut off the contingent remainders. In *Joseph Goldstein,* 37 T.C. 897, 905 (1962), we explained the dichotomy as follows:

If the settlor's retained power is presently exercisable, and is not subject to a condition precedent, despite the fact that the effect of its exercise may subsequently be defeated by events beyond his control, and despite the narrow range within which the power may be exercised, then it prevents the divestment of dominion and control required for the consummation of a gift. On the other hand, if the power retained by a settlor becomes exercisable only upon the occurrence of an event over which he had no control, or upon the concurrence of someone having an interest in the trust property adverse to his, such a reserved power does not make a gift by transfer in trust incomplete.

Henry's retained power clearly falls in the first category.

Respondent maintains that even though we have held that the retained power enabled Henry to change the beneficiaries' respective interests, at least a part of the transfer is subject to the gift tax. He contends that the transfer in trust was made by both Henry and Henriette; that Henriette, not being a trustee, retained no control whatsoever over the trust; and that, therefore, the transfer by her of her undivided one-half interest in the stock was a completed and

---

[10] The trust involved in *Smith* v. *Shaughnessy* is quite similar to the trust before us, the principal difference being that the contingent remainder there followed a reversionary estate, whereas here it followed a defeasible vested remainder. See also *Burnet* v. *Guggenheim,* 288 U.S. 280 (1933).

taxable gift in 1960. To support this contention, respondent relies on the language of the trust indenture, signed by both Henry and Henriette, which recites that the "settlors have given herewith by way of gift and have transferred, assigned and conveyed to the Trustees" the 110,500 shares of stock.[11]

But the stock certificate issued by the Corporation on February 23, 1960, shows Henry Goelet to have been the owner of the 110,500 shares. The certificate is endorsed by Henry Goelet alone. This certificate is evidence of ownership of the stock in Henry alone. N.Y. Pers. Prop. Law secs. 162, 182; *Peets* v. *Manhasset Civil Engineers, Inc.,* 4 Misc. 2d 683, 68 N.Y.S. 2d 338, 344 (Sup. Ct. 1946). Furthermore, Henriette testified that, although she signed the trust indenture at her husband's request, she did not own any of the stock, indeed that in 1960 she owned no stock whatever. She further testified that she knew nothing about her husband's business and that she never even had a joint bank account with him. We found her testimony to be credible and sufficient to overcome any inferences which might be drawn from the circumstance that she signed the trust indenture and is described therein as one of the settlors.

We find nothing in the gift tax returns filed by Henry and Henriette to support respondent's position. The original return, dated April 13, 1961, described Henry as the donor and merely contained Henriette's consent under section 2513 to have the gift considered as having been made one-half by each of them. While Henriette filed a return on her own behalf on July 1, 1963, it stated that the gift was made by her spouse.

We conclude that the transfer was not a taxable gift.

*Decisions will be entered for petitioners.*

---

[11] The parties have briefed petitioner's argument that this contention raises a new issue not covered by, and inconsistent with the literal language of, the deficiency notices and that the burden of proof, therefore, rests with respondent. Without deciding the merits of this contention by petitioner, we have reached the conclusion, stated below, by viewing the evidence as if the burden of proof rested with petitioner.