(85 Misc. Rep. 193)

### VANDERPOEL v. VANDERPOEL et al.

(Supreme Court, Special Term, New York County.  April, 1914.)

WILLS (§ 498*)—CONSTRUCTION.

Where a will, after providing for a separate trust fund for the benefit of testator's granddaughter, a daughter of a deceased son, by the same paragraph which declared a trust in the remainder of the estate, the income to be paid in equal shares to his surviving children, two daughters and two sons, further provided that, if any one of "said children or my said grandchild shall die" without issue surviving, the income to which he or she would be entitled, if living, "shall be divided between my surviving children above mentioned and the lawful issue of any deceased child," the words "lawful issue of any deceased child" did not include such granddaughter, and hence, on the death of a daughter, such granddaughter was not entitled to share with her two surviving uncles and aunt in the lapsed share of the deceased daughter.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1087–1089; Dec. Dig. § 498.*]

Action by George B. Vanderpoel, as surviving executor of, and trustee under, the last will and testament of Jacob Vanderpoel, deceased, against Waldron B. Vanderpoel and others.  Judgment for plaintiff.

Man & Man, of New York City (Frederick H. Man, of New York City, of counsel), for plaintiff.

Hamilton, Gregory & Freeman, of New York City (William H. Hamilton, of New York City, of counsel), for defendant Waldron B. Vanderpoel.

Warren E. Sammis, guardian ad litem, of New York City, for infant defendant Catherine Anne Vanderpoel.

Charles H. Dilley, of New York City, for defendants Ambrose E. Vanderpoel and another.

William M. Wherry, Jr., of New York City, for defendants Loew.

Frederic E. Mygatt, of New York City, for defendants Loew, as executors.

Franklin E. Searle, for defendants Johnson and another.

Marx E. Harby, guardian ad litem, for infant defendant Sinnott.

GOFF, J.  The surviving executor and trustee under the last will and testament of Jacob Vanderpoel, deceased, seeks (1) the appointment of a trustee in his place; (2) a judicial settlement of his accounts and those of the deceased coexecutor and cotrustee; (3) an adjudication upon certain transactions in real estate made under a power contained in the will; and (4) a determination of a question raised by some of the defendants in respect to the true meaning of the will.

On the first three propositions there is virtual agreement on the part of all parties to the action, and the interlocutory judgment to be entered upon this decision should provide (1) for the appointment of a new trustee, to whom the plaintiff may deliver all the assets in his hands, except a sufficient sum to be reserved to meet expenses, costs, etc., so that the accounts may be presented and continued to

completion; (2) for the appointment of a referee to state the accounts of the plaintiff and of his deceased coexecutor and cotrustee as to both principal and income, so that a final judgment may be entered discharging the plaintiff and the representatives of his deceased cotrustee; and (3) as agreed upon the trial, for an adjudication that the real estate transactions of the plaintiff and his deceased cotrustee, wherein were concerned the parcels of real estate as proved purchased by them for investment, were made under the authority of the provisions of the will and with the consent required thereby for the investment of the capital, but that such transactions should remain open for inquiry on the accounting. As stated by me upon the trial, my inclination is to conserve the estate by confiding its management to the family, provided the concurrence of all concerned be expressed, and to this end, when respective counsel submit their proposed interlocutory judgments, they may offer suggestions as to the appointment of a trustee.

Two years before his death, on February 8, 1884, Jacob Vanderpoel made a will, which was duly admitted to probate. Letters testamentary were issued to the plaintiff and to Frederick W. Loew, since deceased. At the time of the execution of the will the testator's eldest son, Benjamin, was dead, and at the time of the testator's death there survived him two sons, the plaintiff George B. and the defendant Waldron B. Vanderpoel, two daughters, the defendant Julia V. Loew and Mary E. Vanderpoel, since deceased, and the defendant Mary Elizabeth Vanderpoel, a grandchild, then unmarried and about 17 years of age, the only daughter of the deceased son Benjamin, as his heirs and next of kin. Frederick W. Loew died on November 7, 1909, and up to the time of his death (in accordance with the provisions of Jacob Vanderpoel's will) he and the plaintiff acted as executors and trustees under the will, and since that time the plaintiff has acted as sole surviving executor and trustee. By his will Jacob Vanderpoel gave and devised all his estate to his executors in trust (a) to set apart the sum of $20,000, the income of which was to be paid to his granddaughter, Mary Elizabeth Vanderpoel (later by marriage Mary E. V. Sinnott and by a second marriage Mary E. V. Johnson), during her life; and (b) to invest the residue of the estate as in the will mentioned, to collect the income and pay one-quarter thereof to his daughter Mary E., one-quarter to his daughter Julia V., one-quarter to his son George B., and one-quarter to his son Waldron B. He then provided in paragraph fourth of the will as follows:

"Whenever any one of my said children shall depart this life, leaving lawful issue him or her surviving, then my said executors shall set apart one undivided one-fourth part of all the rest, residue and remainder of my estate so invested for the benefit of my children as above mentioned; or in case my said grandchild shall depart this life, leaving lawful issue her surviving, then they shall take the said sum of twenty thousand dollars so set apart for her benefit as above set forth and shall invest the same in the way and manner above mentioned for the use and benefit of the issue of such deceased child or grandchild, and shall use and employ the rents, issues, profits and income thereof for its or their maintenance and education, or in case it or they shall be of a sufficient age to justify the same, then to pay over such rents, issues and profits to it or them until it or they shall respectively arrive at the age

of thirty years, when the whole of the principal so set apart as above mentioned, or such part thereof as they may be respectively entitled to (if the issue shall consist of more than one) shall be paid over to it or them. To have and to hold the same to it or them, to its or their sole use, benefit and behoof forever. In the event that any one of my said children or my said grandchild shall die without leaving any lawful issue him or her surviving, then the income and profits of my estate to which he or she would have been entitled, if living, shall be divided between my surviving children above mentioned and the lawful issue of any deceased child, share and share alike, such issue to take the share to which the parent, if living, would have been entitled, and the principal shall form a part of the common fund to be divided among the lawful issue of my said children whenever such issue shall arrive at the age of thirty years, as above mentioned."

Subsequently to the probate of the will an action was brought to obtain a judicial construction of its terms, and with particular reference to the claim made that the terms of the will suspended the power of alienation beyond two lives in being at the death of the testator, and were therefore in contravention of the rule against perpetuities. At Special Term in 1885 the trusts established by the will were adjudged "valid and lawful." On appeal to the General Term this judgment was affirmed (Vanderpoel v. Loew, 7 N. Y. St. Rep. 304), and Brady and Daniels, JJ., in their respective opinions, construed the meaning of paragraph fourth above quoted. The case then went to the Court of Appeals, where Finch, J., speaking for the court, in an elaborate opinion affirmed the judgment of the General Term. 112 N. Y. 167, 19 N. E. 481. Since it is now argued that the primary question before the court in the previous case was whether the will illegally suspended the power of alienation, and that the opinions construing the will in its particulars were obiter dicta, and since by stipulation the construction of paragraph fourth of the will has been presented to me for determination, I shall at the outset treat the will, outside of what is .res adjudicata, as though this were the first time that it was presented to any court.

And first as to the immediate cause that has created the issue. Mary Elizabeth Vandepoel, daughter of the testator, died on June 26, 1903, leaving no issue. Since her death, and, as counsel for the plaintiff states, in accordance with the decision of the Court of Appeals in the case of Vanderpoel v. Loew, supra, the plaintiff, as executor and trustee, has paid the income of the primary share of Mary E. Vanderpoel, or one undivided quarter of the "common fund," so called, in equal shares to the other three surviving children of the testator. Counsel for the defendants Mary E. Vanderpoel Johnson and her two children by her first marriage, James P. Sinnott and Helene Vanderpoel Sinnott, contend that the last clause of the fourth paragraph of the will either plainly provides that upon the death intestate of any one of her four aunts or uncles the testator's granddaughter is entitled to a definite part of the lapsed portion of the estate, with remainder over to her children upon her death, or else that the will is in this particular ambiguous, and, if so ambiguous, must now be construed by this court in accordance with what it is argued must have been the intention of the testator in reference to his "beloved granddaughter."

Before going further, a dispute as to the wording of the will must be disposed of. The original will has been lost, according to the testimony of the plaintiff, and, though diligent search has been made for it, it has not been found, and may have been lost in a fire. In the middle of the last clause of paragraph fourth thereof, as set forth in the amended complaint in this action, appears the phrase "shall be divided among my surviving children above mentioned and the lawful issue of any deceased child." It is argued that the word "any" should be "my," for the reason that the judgment roll in the Court of Appeals contains the word "my," that therefore the doctrine of res adjudicata applies, and that the plaintiff is estopped from showing that the word "my" should be "any." As against this single fact there are the following facts: A certified copy of record of the will in the surrogate's office in evidence, where the word is "any"; the opinions of the justices at General Term and the headnote of the Court of Appeals case, where the word "any" is used; the language of Judge Finch in the Court of Appeals, showing that he read it as "any," and the briefs of counsel on both sides before the Court of Appeals confirming that view. But, even admitting that the doctrine of res adjudicata would apply to a document of record, the controlling facts are that the original complaint in the old action of Vanderpoel v. Loew, supra, contained the word "any"; that the original complaint was amended by an order authorizing only the addition of certain necessary allegations; that a change of the word "any" to "my" was not one of those allegations; that the amended complaint purports to be but a copy of the original complaint as so amended; and that the amended complaint is not sworn to. Therefore, when the Court of Appeals in its decision found that the will was as set forth in the amended complaint, it meant the original complaint amended in accordance with the provisions of the order allowing the amendment, and as so amended the word is "any," and not "my."

Despite the seeming intricacy of the many issues alleged in this case, the one essential query is: Upon the death of either an aunt or uncle without issue, was Mrs. Johnson, the granddaughter, entitled to any interest in the lapsed share of said aunt or uncle? It is perfectly clear from the language of the will that the testator first of all provided for a separate and several trust fund for the benefit of his granddaughter, and it is significant that this was regarded by him as sufficient for her "education and support." This is clearly a primary trust. The income from the $20,000 was to be paid to her till she reached the age of 21, subject to the executors' discretion, and after she reached that age "upon her own individual receipt." If she died, "leaving lawful issue her surviving," the income was to be paid for the maintenance and education of her issue until said issue reached the age of 30, when the whole of the principal was to be paid over to them. If she died "without leaving any lawful issue her surviving," her income was to be divided between the testator's surviving children and the "lawful issue of any deceased child," and the principal was to form a part of the "common fund" and as such to go to the issue of "my said children" whenever they reached the age

of 30 years. The plain statement of that sentence refutes Mrs. Johnson's claim as to the meaning of the phrase, "lawful issue of any deceased child"; it being her claim that she, as the lawful issue of the deceased child, Benjamin, is the "lawful issue of any deceased child" under that provision. This phrase cannot refer to Mrs. Johnson, for in the terms of the eventuality provided for by the will the assumption that Mrs. Johnson has died is essential. Nor can it refer to Mrs. Johnson's issue, because the particular contingency arises only when she died without issue.

On the contrary, a different state of facts arises when one of the children dies without issue, for in that case the phrase "and the lawful issue of any deceased child" may have a distinct meaning in case a brother or sister of the child assumed to have died has left lawful issue him or her surviving. In any other case it can have no meaning. After providing for the primary trust fund for the benefit of his grandchild, the testator declared a trust in all the rest, residue, and remainder of his estate and the income therefrom, to be paid one-fourth part each to "my daughter Mary Elizabeth," "my daughter Julia" (Loew), "my son George B.," and "my son Waldron B.," and to continue to be paid "during the term of the respective lives of my said children." When any of the said four children died "leaving lawful issue him or her surviving, then the executors were directed to "set apart one undivided one-fourth part" of said fund so held in trust "for the use and benefit of the issue of such deceased child" and use the income thereof for the "maintenance and education" of such issue, and when such issue arrived "at the age of thirty years" to pay over to it or them, if more than one, the principal of said fourth part "as they may be respectively entitled to" it. On the other hand, when any of the said four children died "without leaving any lawful issue him or her surviving," then the income of the estate to which that child, now deceased, "would have been entitled if living," was to be divided "between my surviving children above mentioned and the lawful issue of any deceased child, share and share alike, such issue to take the share to which the parent, if living, would have been entitled," and the principal went into the "common fund, to be divided among the lawful issue of my said children whenever such issue shall arrive at the age of thirty years."

As before mentioned, the specific decision of the Court of Appeals was that the provisions of the will just adverted to in this paragraph did not contravene the rule against perpetuities, or, more specifically, that three lives would not be interposed before the final vesting of any of the original one-quarter shares of the residue of the estate. I am bound by this decision. In more detail: Each of the four children of the testator was given the income for life in an undivided fourth part of the residue of the estate. The remainders of these fourths were limited directly to the issue of the four children. There has never been any question as to the meaning of the will in the event that each of the children had issue. And in this connection it must be observed that, if each of the four surviving children of the testator died leaving issue him or her surviving, the granddaughter, even

on her own interpretation of the will, would receive nothing save her life interest in the $20,000. This fact is most important, relating to the intention of the testator in the alternative where one or more of the four children died without issue. Dispute arose only when one of the children died without issue. In fact, that is the very contingency which has happened, for one of the testator's daughters, Mary E. Vanderpoel, has died without issue.

Further contingencies need not be within the purview of this opinion, not only because they have not been raised, but also because the Court of Appeals of necessity had to consider them in deciding whether the rule against perpetuities was infringed, and therefore the determination of that court is controlling as to what would be the basis of division in case a second of the four children should also die without issue after one of the said four children had previously died without issue. Turning to the will, what are its provisions in case Mary E. Vanderpoel dies without issue?

"Then the income * * * of my estate to which * * * she would have been entitled, if living, shall be divided between my surviving children above mentioned and the lawful issue of any deceased child, share and share alike, said issue to take the share to which the parent, if living, would have been entitled, and the principal shall form a part of the common fund to be divided among the lawful issues of my said children whenever such issue shall arrive at the age of thirty years as above mentioned."

I have discussed the meaning of the phrase "and the lawful issue of any deceased child" in a previous paragraph on the assumption that the granddaughter died without issue. In the will the latter assumption appears conjunctively with the one now under consideration, and though I have determined that said phrase cannot mean what counsel for the granddaughter maintains in the one alternative, I go further. To repeat, it is claimed that "the lawful issue of any deceased child" means the granddaughter, and that upon the death of Mary E. Vanderpoel, the granddaughter, Mrs. Johnson, was entitled to share with her surviving two uncles and one aunt, share and share alike, in said lapsed share of Mary E. Vanderpoel. I do not agree with this claim, because it is contrary to the clear intention of the testator, and because it is violative of the plain words of the will itself. Even a cursory reading of the will is persuasive that the testator intended to treat his four children and his grandchild in a wholly different manner. It cannot be successfully maintained that the denial of the grandchild's claim in this action will amount to her being virtually cut off. On the contrary, the testator carved out for her a primary trust fund. He provided for her first of all. There is no evidence that at the time he made his will his estate was so great that the four living children or their issue would receive proportionately much larger shares in the estate than Mrs. Johnson. And even assuming that there was evidence to prove that, then so far as the life incomes of the five beneficiaries specifically named in the will are concerned, the testator clearly and without doubt has intentionally preferred the children. Is it not a fair presumption that he intended such preference to be continued as regards the remainders?

As before stated, if the daughter Mary E. Vanderpoel had died leaving issue, Mrs. Johnson would have no claim whatsoever as the result of her aunt's death. Again, so far as control of the investments by the trustees is concerned, such investments were to be approved by a "majority of my children hereinafter mentioned," unquestionably meaning his four children; and in the last clause of the will, "provided always that a majority of my said children above mentioned *who shall be living at the time* shall approve of such sale or investment." The phrase "who shall be living at the time" certainly contemplates only one thing, and that the death of one or more of the four children. This phrase itself lends much weight to what I believe to be the proper construction of the meaning of "the lawful issue of any deceased child." Throughout the will, in referring to Mrs. Johnson, the testator characterizes her and refers to her as "my granddaughter" or "my said grandchild." He nowhere speaks of her as the "issue of any (or my) deceased child." On the other hand, the four living children are first designated as "my children hereinafter mentioned," then specifically named; and then throughout the remainder of the will as "my said children," save in the first half of the particular clause disputed in this action, where the testator says "my surviving children above mentioned." Why *"surviving"* unless the testator was clearly contemplating a child dying after his death leaving issue, and that issue standing in the place of the deceased child and named in the will as "the lawful issue of any deceased child?" Furthermore, when in the first part of paragraph fourth he frequently uses the phrase "my said children," he uses it in conjunction with an express additional reference to his granddaughter as "my said grandchild," showing clearly the distinction that he had in mind.

That the testament affords its own testimony in support of this view is further emphasized by the unequivocal language that the children do not take as a class, but as individuals mentioned by name. This manifests a clear intention to distinguish between the individuals of a class and the class itself. Where the beneficiaries who may constitute a class are mentioned by name, they take as individuals and not as members of a class. Of issue there were five children. Four survived the testator. He mentions the five by name, but the one who had predeceased the testator he mentions only as the father of the grandchild, Mary Elizabeth. To the four he mentions by name he gives each a one-fourth of the income. For the education and support of this grandchild he set apart the income of a specific sum, and then provided that, in the event of any one of the named children or the grandchild dying without issue, the income which such deceased would be entitled to, if living, should be divided between "my surviving children and the lawful issue of any deceased child." Thus he has treated of five distinct entities, four of them children, and the fifth a grandchild, and when he says "the lawful issue of any deceased child" he undoubtedly meant the issue of any one of the four children of whom he had been treating and for whom he had provided. The phrase "issue of any deceased child," if standing

alone, might in its narrowest construction support the claim that it included the issue of Benjamin; but where it cannot without violence be separated from the context, or be considered apart from its antecedents, which give life and reason to the will, that narrow construction must yield to the rational one, which will give effect to the true intent of the testator, and the meaning of the will as expressed in the harmonious relations of its several provisions. The intention of the testator, as shown by the scheme of the will as a whole, is that the first beneficiary of each trust was to be treated alike, and was intended to have a life interest held in trust, and not to have control of the principal, which was to be preserved for his or her issue.

If the contention of the granddaughter should prevail, however, she would be treated in a very different manner from the life tenant of the other trusts, since she would, as "issue of a child," receive absolutely the principal of a part of the common fund. This would be contrary to the intent as expressed by the language of the will, and defeat the testator's design of confining the interests of the life tenants to the income for life only, preserving the principal for their respective issue. When the testator used the phrase "the lawful issue of any deceased child," he coupled it with the further phrase, "such issue to take the share to which the parent, if living, would have been entitled." "Parent" must mean a beneficiary under the will taking something, if living. The granddaughter's parent predeceased the testator, and even if he were living, he nevertheless would not take anything to which his issue could succeed, because he was not a beneficiary in the will, and all the estate was given to others. The phrase, "the share to which the parent, if living, would have been entitled," excludes Mrs. Johnson. "Expressio unius est exclusio alterius." To summarize, then, the meaning of the clause of the will in dispute: If prior to the death without issue of one of the testator's four children another one of said four children should have died leaving issue, then the income theretofore paid to the one of said children dying without issue should be paid to the surviving two of said four children, and the issue of that one of the four children who had died leaving issue.

Counsel for Mrs. Johnson and her children have read various interpretations into the opinion of the Court of Appeals. I have reached my conclusion wholly irrespective of the opinions of the General Term and the Court of Appeals, having assumed for the purpose of this case that upon the particular point presented to me, and which I have treated, those opinions were obiter dicta. However, even if Judge Finch's careful opinion be regarded as obiter dicta, and even if his cogent analysis of the provisions of the will is not res adjudicata, nevertheless these very obiter dicta as expressions of the opinion of a learned jurist on the very facts now before me are entitled to most careful consideration. The same may be said of the opinions of Brady and Daniels, JJ., at General Term. In 7 N. Y. St. Rep., at the top of page 310, Judge Daniels, referring to the very contingency which has happened, says:

"If this direction shall take effect as it has been provided, then each of the surviving children of the testator and the issue of *such children* will take the rents and profits provided for the deceased beneficiary in equal, separate, and distinct shares, and the principal of the fund provided for such beneficiary will be in the same manner divided among the persons directed to be entitled to finally receive it."

In Vanderpoel v. Loew, 112 N. Y., on pages 181, 182, 19 N. E. on page 485, Judge Finch, discussing the effect on each share of the death of the life beneficiary without issue, says:

"The palpable purpose of the testator was to vest such share in the issue of children who had such issue in the same manner as the original shares were vested; that is, severally and in due proportion. The income of the share was to be divided among the surviving children of the testator and the issue of any deceased child, who for that purpose represented and stood in the place of its or their parent, during their respective lives; and the principal of such accrued or secondary share was to vest at their several deaths in their issue. The intention was to add the primary share of a child dying without issue in equal parts to the remaining primary shares existing and provided for, and subject the added proportions to precisely the same limitations as already governed the several original shares."

Counsel and special guardian for the infant Helene Sinnott has urged that Judge Finch made a mistake in arithmetical computation. This contention is not sound. The specific references of the Court of Appeals were not solely "for purposes of illustration," not only because the learned judge does not so limit or denote his opinion, but also because it was within the purview of the first action, as stated by counsel in his brief, "to determine the validity of each and every part of the will."

Much as been said and written by respective counsel concerning Plaintiff's Exhibit II, and particularly with reference to the recital therein over Mrs. Johnson's signature that the residuary trust in the will is for the benefit of the four surviving children and their issue alone. Whether this amounted to a release on her part of the claim now made in this action, whether she is thereby estopped, as well as whether any laches is manifest in her present position, are questions perhaps of academic interest, but not necessary to the decision herein. Lengthy comment and citation has been made on the proper attitude of the court in the interpretation of wills, and in the last analysis that attitude is said to be to give effect to the intention of the testator. With just that in mind have I determined this case.

Judgment for the plaintiff. Questions of cost and other details will be settled when proposed interlocutory judgments are presented, which must be within 10 days.

Judgment for plaintiff.