RUMSEY, J.
— The plaintiff is a trustee under the will of Charlotte Gomez, deceased, and he brings this action for an accounting as such trustee, and that the court may declare who are entitled to the funds in his hánds, his trust having determined, and to direct the payment of such funds to the proper person. There is no dispute as to the facts. They are that in the month of February, 1848, Mrs. Charlotte Gomez made her will, and that she died on the 1st day of December, 1849, and her will was admitted to probate. She was at that time a widow with two daugters, one of whom, Emmeline, died in 1885; the other, Matilda, died on the 6th day of December, 1893. The defendant Edmund Hendricks is the administrator of Matilda Gomez, and among the other defendants are the heirs-at-law of Harmon Hendricks, a brother of Mrs. Charlotte Gomez. It appeared from the account of the plaintiff that as trustee under the will of Charlotte Gomez there was in his hands for distribution, besides the principal of the trust fund, something over $30,000, which had been saved out of the income since the trust was created. The question presented *772 was whether, under the will of Charlotte Gomez, this saving belonged to Matilda Gomez, the cestui que trust, and therefore was to be paid over to her administrator, or whether it passed to the heirs of at law of Harmon Hendricks under one of the provisions of her will. The referee came to the conclusion that this sum did not vest in Matilda Gomoz during her life, but was undisposed-of income, and passed to the heirs of Harmon Hendricks under the will. The correctness of this conclusion is challenged by the administrator, and that presents the only question which is to be decided in this case.
The first clause of the will of Mrs. Gomex gave to her executor the sum of $12,000, invested in Croton water stock, “to be held by them in trust to apply the yearly income and dividends thereof in and towards the support, maintenance and clothing of my daughter Matilda, during her natural life, charging on them that while her unhappy state continues they carefully attend to her wants and necessities in the said application of the said interest, income or profits to her said maintenance, support and necessities.” By the second clause of the will she devised the residue of her estate to trustees to pay over to her daughter Emmeline, with certain limitations, which are not material here. By the fourth clause, in case Matilda survived Emmeline, Mrs. Gomez bequeathed all the property, real and personal, devised to be held in trust for Emmeline, to her executors, “ to be held in trust to apply the rents, income, dividends and profits of all and singular the same to the support, maintenance, wants and necessities of my said daughter Matilda during her natural life, and after her decease to transfer, convey and set over all and singular the same, my real and personal estate so left in trust, to the children and lawful heirs of my brother Harmon Hendricks.” Emmeline, as has been seen, died before Matilda, and thereupon the trustees took the whole estate in trust for Matilda, under the last provisions of the will. Matilda Gomez was an inmate of an insane asylum at the time of her mother’s death, and she continued in that condition until the time of her death, in 1893. The income which was not necessary to be used for her support was deposited by the trustees from time to time in different savings banks in the city, where it remained, and where it was at the time this áction was brought. In concluding whether this income vested in Matilda Gomez absolutely as cestui que trust under this will, at the time when it was earned, as claimed by her administrator, it is necessary to ascertain what is the intention of the testator, for in this, as in all other cases, the intention of the testator'is the sole thing to be ascertained in the construction of a will. In looking for that intention, which must be sought in the words of the will itself, so far as may be, it is first to be noticed that in no one of the clauses of the will does the testator make any provision for an accumulation of income. In the first clause she provides for the payment of the income to the maintenance and support of her daughter Matilda. In the second clause she requires the trustees to pay the income to her daughter Emmeline. In neither clause does she make any provision for the disposition of undisposed-of income. It is clear *773 that she intended that Emmeline should receive all the income of the trust fund created by the second clause of the will. If she had a different intention as to the share of Matilda in the first clause, it is probable she would nave said so. The amount of the trust fnnd disposed of by the first clause of the will is $12,000, which stands, as she says, at 5 per cent., the yearly interest then being $600. It was quite clear that that sum was not much, if any, more than sufficient to meet the yearly necessities of her daughter Matilda, with such reasonable provision for contingencies as a careful person would make, and there was every reason to suppose that all of that income wonld be required for the purposes of the trust. As a matter of fact, it appeared that for the thirty-six years during which Matilda received only the income of this $12,000, and until the death of Mrs. Adolphus, the surplus above what was required for her necessities, with compound interest as allowed by the savings bank, amounted to-only $2,700,' so that it is quite clear, that substantially the whole income was required for Miss Gomez’s support. There is good reason, then, with regard to that fund, why the testator should not have made any provision for the undisposed-of income. But if she thought that the income of $12,000 would be sufficient to maintain her daughter in the asylum, she must have known that, if Matilda outlived Emmeline, the income which her trustees would receive under the fourth clause of the will would be very much -more than the sum required to supply her simple wants in the asylum, and, if she had intended to make any different disposition of that increased income than of the smaller income provided for by the first clause, she would undoubtedly have done it, and, as she did not do it, it is fair to assume-.that she intended the income in each case to' take the same direction. 1 Besides that, we see, in looking at the fourth clause, that the devise over after the death of Matilda excludes the income and includes only the real and personal estate left in trust. If it was intended that the income should pass, certainly these words, which are practically words of exclusion of the income, would not have been used. The fact that the income was more than sufficient for the wants of Matilda Gomez affords no inference that there was any intention to accumulate the income, because no accumulation of income is allowed except for one who is a minor at the time of the death of the testator, and no construction of the will which would admit of the intention to accumulate can be indulged in in the face of the rule that an intention which is contrary to the statute will not be inferred unless it is absolutely necessary to infer it. Van Nostrand v. Moore, 52 N. Y. 12; 2 Jarm. Wills (5th ed.) 842; Roe v. Vingut, 21 Abb. N. C. 404; 17 St. Rep. 123. By the terms of the trust in the first clause the trustees are directed to apply the yearly income to the support and maintenance of Matilda; and by the fourth clause they are directed to apply the income, dividends and profits of all and singular the estate to the same purpose. It is contended on the part of the respondents that this provision gives.to the trustees a discretion as to how much of the income of the trust estate shall be applied to the use of the cestui que trust. We do not think so. The *774 direction in the will is to apply the “yearly income,” “the income, dividends and profits of all and singular the real and personal property.” These words leave no discretion in the trustees as to the amount of income which shall be applied, but they directly require the particular portion of the income specified in the will to be applied to the purposes for which it is intended. The only discretion in the trustees is a discretion as to the time and manner of the application. It was not left to their judgment to say whether or not she required all the income, nor whether a particular portion only should be devoted to that purpose, but the will expressly prescribed that all of it was to be applied- to the purposes of the trust. In the case of Bronson v. Bronson, 48 How. Prac. 481, the trustees were directed to apply to the sole and separate use of the cestui que trust the income of her portion of the estate, and the court held that under that provision the whole of the income vested in the daughter. In Beevor v. Partridge, 11 Sim. 229, the will bequeathed to trustees certain money for the maintenance, support, and benefit of the testator’s three children in such shares and proportions and manner as the trustees should think proper, but the court in that case held that the whole income was to be given for the benefit of the children, and that the whole income belonged to them, and the trustee had no discretion as to the amount which should be applied. The same rule was laid down in the-case of Webb v. Kelly, 9 Sim. 469, and in the very recent case of Gasquet v. Pollock, 1 App. Div. 512. The trust in that case was to collect and receive the income and apply the same to “ the use of my daughter Maria,” who was not of sound mind; and this court there held that the trustees had no discretion as to the amount of the income which should be applied, but the title to the whole of it vested in the daughter. There aromases, to be sure, some of which are referred to by the learned referee in his opinion, in which it was held that the trustee had discretion as to how much of the income should be devoted to the purposes of the trust. But in each one of those cases the court decide upon the ground that the words used were apt* to vest in the trustee a discretion as to the amount of the income to be applied to the purposes of the trust. The case of McKnight v. Walsh, 24 N. J. Eq. 498, did not involve the question here presented. In that case the devise was, “ he, my said executor, appropriating and expending the legal interest arising from said sum toward the proper maintenance and education of such children.” -The court held, not that the executor had' discretion as to how large a portion of the income should be paid for the benefit of the children, but it was not proper for a trustee to pay the whole interest of the trust fund to the father of the children, to be used for the benefit of the children, and thereby abandon all exercise of his own discretion. The case does not bear at all upon the questions presented here.
We have, then, this situation of affairs: that the income of the trust fund was to be used for the support, care, and maintenance of Matilda Gromez, and that the whole of it was to be devoted to that purpose, and that the trustees were bound so to use it at such time and manner as was for the best interest of the cestui que *775 ."irust. Whenever such a case as that presents itself, the rule is that the whole income vested in the cestui que trust. If it so vested, then certainly, at her death, it belonged to her administrator, and it did not pass to the heirs of Harmon Hendricks as undisposed of income. For this reason we have- come to the conclusion that so much of the judgment as directs that the undisposed of income and its increase shall be paid to the heirs at law of Harmon Hendricks is incorrect,' and the judgment must be .modified by striking out that portion thereof, and directing instead that the remainder of undisposed-of income in the hands of 'the trustee after paying the charges against it as directed by the judgment should be paid over to the administrator of Matilda Gomez.
The judgment is therefore modified accordingly, and, as modified, is affirmed, with costs to the appellant to be paid out of the funds in the hands of the substituted trustee.
All concur.