NELLIE S. ALEXANDER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78995. Promulgated November 23, 1937.

*R. M. Stroud, Esq.*, for the petitioner.
*Charles P. Reilly, Esq.*, for the respondent.

#### OPINION.

SMITH: This proceeding is for the redetermination of a deficiency of $1,183.76 in petitioner's income tax for 1932. In her return for that year the petitioner reported a net income of $9,500.13, including $8,346.33 of "fiduciary income" from a trust of which she was life beneficiary. In determining the deficiency herein the respondent has increased the fiduciary income reported by the petitioner by the amount of $10,062.50, representing a loss which the trust sustained

on the sale of capital assets. The correctness of that adjustment, that is, whether the capital loss of $10,062.50 should be taken into account in computing the distributable income of the trust, is the only question in issue in this proceeding.

The facts are stipulated. By a trust indenture dated December 31, 1929, the petitioner, a resident of Miami, Florida, created the "Nellie S. Alexander Trust," transferring to her husband, John Alexander, trustee, her credit balance of $325,000 with the Marathon Investment Co., a Delaware corporation, whose stock was all owned by the Alexander family. The petitioner herself owned about 20 percent of the stock. The Marathon Investment Co. held the shares of stock of a number of lumber companies with which the Alexander family had been long identified and also a substantial amount of marketable securities.

The trust indenture provided in paragraph first that during the petitioner's lifetime the trustee should "pay the income of said trust estate to her in annual, semi-annual or quarterly installments as may be most convenient for the due and careful management of the said Trust." After the death of the petitioner the income of the trust was to be paid:

* * * in equal shares to her four children during their lives, or to the survivors of them if any child shall die without issue. If any child shall die leaving issue then the share of income which would have been payable to such child if living shall be divided equally between such issue.

THIRD: Upon the deaths of said children or any of them leaving issue, the said share of income shall be paid to such issue as aforesaid for a period of twenty-one years from the date of the death of last surviving child of the party of the first part, when and whereupon the corpus of said Trust Fund shall be distributed per stirpes in equal shares to the issue of said deceased children and this Trust shall then cease. Should there be no issue of any deceased child and issue of other deceased children then the share of income which would have gone to the deceased child in his or her lifetime shall be paid to the surviving brothers and sisters and the issue of deceased child or children in equal shares by representation and not per capita.

The trustee was given "unrestricted power over the income and principal of said trust fund except as above" and was authorized to invest the trust fund without regard to legal restrictions. The trustee was not permitted to make any advance payments to the beneficiaries of either income or principal.

Immediately upon the creation of the above described trust the Marathon Investment Co. transferred to the trustee out of its assets stocks and bonds of a then market value of $323,353.28 in complete satisfaction of the credit balance which the petitioner had transferred to the trustee.

During the first year of its operation, 1930, the trust realized a net profit from the sale of securities of $7,566.17 which was distributed to

the petitioner and was reported by her as a part of her fiduciary income in her income tax return for that year. During the year 1931 the trust sustained a net loss from the sale of securities in the amount of $17,726.25. Its income from interest and other sources was $17,-850.83. After allowing for incidental expenses the operation of the trust for 1931 showed a net loss of $212.07. The trust made no distribution to the petitioner in that year.

During the taxable year 1932 the trust sustained a loss of $10,062.50 on the sale of bonds which it had held for more than two years and a further loss of $2,867 on the sale of bonds which it had held for less than two years. It received income from interest and other sources in the amount of $18,770.10 and its incidental expenses amounted to $361.27. The trustee determined that the distributable income of the trust in 1932 was $5,267.26, computed as follows:

| | | |
|---|---|---|
| Interest on bonds in trust fund | | $18,770.10 |
| Deduct: | | |
| (a) Loss on bonds held more than two years | $10,062.50 | |
| (b) Loss on sale of bonds held less than two years | 2,867.00 | |
| (c) Incidental expenses of Trust | 361.27 | |
| (d) Net loss applicable to 1931 | 212.07 | |
| | | 13,502.84 |
| Net amount actually paid to Nellie S. Alexander | | 5,267.26 |

Although the petitioner did not actually receive but $5,267.26 from the trust in 1932, she reported in her income tax return for that year $8,346.33, which was the amount shown as its net income by the trust in its fiduciary return for that year. In such return the trust reported the loss of $10,062.50 from the sale of bonds held for more than two years, but did not report the loss of $2,867 from the sale of bonds held for less than two years, or the $212.07 representing the net loss of the year 1931.

The amounts distributed by the trustee to the petitioner as income from the trust, as above set forth, have been tendered by the trustee and accepted by the petitioner as being in full compliance with the terms and purposes of the trust agreement.

In his deficiency notice the respondent has increased the petitioner's taxable income for 1932 by $10,062.50, on the ground that the loss from the sale of securities held for more than two years constituted a charge against the corpus of the trust and was not a proper deduction in arriving at the amount of income distributable to the petitioner as beneficiary.

After the deficiency herein was asserted by the respondent the trustee and the petitioner executed an agreement in the form of an affidavit, which was submitted in evidence in this proceeding, wherein they set forth that the acts of the trustee in determining the distribut-

able income of the trust and in paying such income to the petitioner in the years 1930 to 1932, inclusive, as set forth above, and also in similarly determining the amounts of income distributable to the petitioner in 1933 and 1934, "were in strict accord with the intent of affiants in creating the above mentioned trust, and in accord also with their purpose to set up and preserve intact as the principal of the trust the sum of $325,000." The agreement further provides that:

This affidavit * * * shall nevertheless be taken as an agreement between the said Nellie S. Alexander, as creator of the trust and beneficiary thereunder, and the said John Alexander, as trustee under said trust, in respect to the true intent of the parties in the execution of said Trust Indenture, and as an agreement between them in the settlement of the accounts between the said trustee and the said Nellie S. Alexander, as life beneficiary of said trust, for the years 1930 to 1934, inclusive.

It is the respondent's position in this proceeding that under the terms of the trust agreement described above the petitioner is entitled to receive, and is therefore taxable on, all of the income derived from interest and dividends on the securities comprising the trust corpus, less the operating expenses of the trust, and that the gains or losses on the sale of capital assets should be credited or charged to corpus and not taken into account in determining distributable income.

We do not so construe the trust agreement. There is nothing in the wording of the agreement itself to indicate that the term "income" as used in paragraph first above refers only to dividend and interest income. In its ordinary meaning the "income" of the business is understood to include the gains from the sale or conversion of capital assets. *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179; *Eisner* v. *Macomber*, 252 U. S. 189. There is every indication that it was so used in the trust agreement here. In the first place, the parties themselves have construed the agreement as directing the distribution of the net income computed with the capital gains or losses taken into account and as requiring the corpus of the account to be kept intact. This harmonious construction of the trust agreement by the parties in interest is to be given great weight. See *Grace Scripps Clark*, 1 B. T. A. 491; *E. L. E. Brenneman*, 10 B. T. A. 544; *Anna M. Chambers*, 17 B. T. A. 820. The rule is more forceful here because the life beneficiary is the creator of the trust and is free to advise the trustee in his interpretation of the trust agreement. It was said by the Supreme Court in *Insurance Co.* v. *Dutcher*, 95 U. S. 269:

The practical interpretation of an agreement by a party to it is always a consideration of great weight. The construction of a contract is as much

a part of it as anything else. There is no surer way to find out what parties meant, than to see what they have done. * * *

It is true, as the respondent points out, that the affidavit and agreement submitted by the parties in this proceeding manifesting their approval of the administration of the trust in prior years, as well as declaring a policy to be adhered to in the future, is not binding upon the Board in the question before us, but at the same time an agreement of this character must receive consideration in determining the intent of the parties.

The trust agreement must be construed in the light not only of the intention of the settlor, but of all the attendant circumstances. It is to be noted that here the trust corpus consisted entirely of stocks and bonds. The settlor must have contemplated that in the careful management of the trust fund it would be necessary for the trustee from time to time to sell some of the securities and purchase others. This was provided in paragraph sixth of the agreement. It might reasonably be that the gain from this trading in securities was expected to prove a material source of income to the trust. Investment trusts of such character are not uncommon.

It is to be noted, too, that the creator of the trust had four living children, who were designated as the recipients of the income of the trust after her death. It is reasonable to suppose that she intended the corpus of the trust to be kept intact for their benefit.

The facts here are similar to those in *Lawrence Fox et al., Executors*, 31 B. T. A. 1181, where we held that the beneficiary of a trust was taxable on the capital gain that was credited to her in the taxable year.

The respondent has not called our attention to any statute or prevailing rule of law of the State of Florida, where the settlor was resident, and we have not found any, which requires the capital gains and losses to be charged to corpus and not taken into account in determining distributable income, as in the State of Pennsylvania. Cf. *Anna M. Chambers et al., Trustees*, 33 B. T. A. 1125.

The respondent submits, citing *Freuler* v. *Helvering*, 291 U. S. 35, that the beneficiary of the trust is taxable on the income which she was *entitled* to receive and not just on what she actually received. This can not be disputed; but, aside from the construction of the trust agreement for which he contends, there is nothing to support the respondent's contention that the petitioner was entitled to receive any more income than she actually received, or, at least, than she reported in her individual tax return. The petitioner is, of course, taxable on all of the income of the trust for the taxable year 1932, including the $212.07 which the trustee withheld from her to offset the 1931 loss. She does not contend otherwise.

934

In our opinion it was error for the respondent to increase the petitioner's taxable income from the trust by the amount of $10,062.50, representing the loss to the trust on the sale of capital assets during the taxable year.

*Judgment of no deficiency will be entered.*