LEONARD MARX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EMILY MARX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

REGINA MARX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LEONARD MARX AND EMILY MARX, TRUSTEES UNDER THE LAST WILL AND TESTAMENT OF JOSEPH E. MARX, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 83831, 83832, 83833, 88593, 88594, 88595.

Promulgated March 7, 1939.

*Emily Marx, Esq.*, for the petitioners.
*S. L. Young, Esq.*, for the respondent.

540

544

OPINION.

HARRON: *Issue 1.*—In the cases of Leonard, Emily, and Regina Marx, individual taxpayers and petitioners, part of the deficiency results from the action of the respondent in adding to their respective taxable incomes certain amounts, representing one-third of the trust income received by the trustees in the taxable year or years under the will of Joseph E. Marx, which amounts were not reported by said individuals in their separate, individual income tax returns because the amounts were not paid over to them by the trustees in the taxable year or years. Respondent determined that such trust income was taxable to the three beneficiaries as income "which is to be distributed currently" by the fiduciaries to the beneficiaries under the provisions of section 161 (a) (2) of the Revenue Act of 1932. Thereupon, respondent allowed to the fiduciaries deductions for such amounts from the gross income of the trust, under section 162 (b), and taxed the beneficiaries for such income, whether dis-

tributed to them or not, under section 162 (b). Determination of the question involved in the main issue in these consolidated proceedings affects the tax liability of the trustees in Docket No. 88594 for the year 1933, accordingly. The trustees, in their fiduciary return for the year 1933, computed and paid income tax on fiduciary income after deducting $10,500 as income "which is to be distributed currently." Respondent determined that the amount of the income to be distributed currently was, rather, $12,601.46 and allowed as additional deductions, accordingly, the amount of $2,101.46. The deficiency of the trustee resulted from other determinations now stipulated out of these proceedings.

The main question in all the consolidated proceedings is whether the annual income of the trust or trusts in the taxable years is taxable to the beneficiaries as income which is to be distributed currently although no distribution was made to them. The question arises under sections 161 and 162 of the Revenue Act of 1932.

In determining this question it is necessary to examine article third of the will, which directs the trustees:

* * * to divide the principal into three equal shares * * * and to dispose of the principal and income of the said shares as follows:

I. *To apply the income* of the share set apart for my said wife, Regina Marx, *to her use during her life*, and upon her death, to divide the principal thereof into two parts and to dispose of the said parts * * *.

II. *To apply the income* of the share set apart for my said son, Leonard M. Marx, *to his use, during his life or until he has attained the age of thirty years* and thereupon to *convey, transfer and pay over* to him the *principal* thereof * * *.

III. *To apply the income* of the share set apart for my daughter, Emily Marx, *to her use during her life*, and upon her death, to convey, transfer and pay over the *principal* thereof * * *. [Italics supplied.]

The petitioners construe the will as giving to the trustees power to distribute or accumulate the income for future distribution at their discretion, as they shall deem proper to meet current needs of the beneficiaries. To support this construction, petitioners endeavor to import an intention from the decedent out of his action in deleting from early drafts of his will such words as would direct the trustees "to pay the income over to" any beneficiary and substituting therefor the words which appear in the last will, "to apply the income to his (or her) use." The trustees and the beneficiaries believe that the testator intended to give the trustees power to distribute *only* trust income *necessary for the support and maintenance* of the beneficiaries and, since they entered upon their duties, the trustees have administered the trust or trusts as, what they term, "discretionary trusts." Their position is stated to be in their reply brief (p. 24) "that the trustees *must* expend whatever income *is needed* by the life bene-

ficiaries, *when it is so needed,* and that in order to do this they must hold, temporarily, income not needed in any year by the life beneficiaries. The accrued income in their hands is alleged to be a temporary accumulation, a temporary surplus, which they allege they must hold to meet future needs of the beneficiaries. Petitioners contend that the trustees are custodians and conservators of any accrued and unexpended amount of income received in each year and that such "accumulation of a temporary surplus" is not invalid nor an illegal accumulation within the meaning of section 16 of the New York Personal Property Law. In brief, petitioners contend that there is to be found in the will an implied discretion in the trustees to hold the trust income in any year for future distribution and in that sense accumulate it.

Two of the beneficiaries of the trust, or trusts, and the trustees are the same individuals. It is easy to understand the procedure followed by the trustees in holding the trust income in the absence of demand for distribution or need therefor. However, it is not the beliefs of the interested parties that control, but the terms of the will. *Commissioner* v. *Guitar Trust,* 72 Fed. (2d) 544. Also, the mere fact that the parties have consented to the withholding of the trust income as it accrued can not affect or change the applicable law, i. e., the local law and the Federal income tax law. *In re Israelites Estate,* 279 N. Y. S. 699; *Hubbell* v. *Burnet,* 46 Fed. (2d) 446.

The testator's intent with respect to the trust income is clearly expressed in the will. It appears that decedent drafted his last will carefully. There is no ambiguity. At the time he executed his will in 1928, it appears to be a fact that none of the petitioners were minors. It also appears that all were competent. Under the law of New York State a direction to a trustee to accumulate income is forbidden except in the case of a minor. Personal Property Law, McKinney's Consolidated Laws of New York, vol. 40, sec. 16; *In re Rogers,* 48 N. Y. S. 181; *In re Hartman's Estate,* 215 N. Y. S. 802; *In re Hoyt,* 101 N. Y. S. 557; *Hendricks* v. *Hendricks,* 3 App. Div. 604; affd., 154 N. Y. 751; *Yukon Alaska Trust,* 26 B. T. A. 635, 641; *Commissioner* v. *Morris,* 90 Fed. (2d) 962; *Morris* v. *Morris,* 272 N. Y. 110; 5 N. E. (2d) 56. The will contains no express direction to the trustees to accumulate income. No provision is made for any disposition of accumulated income. There is no express limitation on the trustees to distribute income each year only in accordance with the needs of the beneficiaries. Nor can it be concluded that there is any such implied discretion in the trustees because the testator adopted the phraseology "to apply to the use of" the beneficiaries, instead of "to pay to" the beneficiaries. Article fourth, paragraph 1, of the will is not applicable, since all the petitioners were adults. The courts of New York have construed the phrase

"to apply to the use of" to be equivalent to the phrase "to pay" where the intent of the testator is not found to be otherwise in the terms of his bequest. *Moore* v. *Hegemen*, 72 N. Y. 376, 378; *Gasquet* v. *Pollock*, 37 N. Y. S. 357; *Scharmann et al.*, 63 Misc. 640; 118 N. Y. S. 687; *In re Van Hoesen's Estate*, 273 N. Y. S. 540. It is concluded that the testator did not give and did not intend to give the trustees any express or implied discretion to accumulate the trust income.

It is evident that the position taken by the petitioners is founded upon the absence in the will of any direction as to the *time* when trust income is to be applied to the use of the beneficiaries, i. e., the will does not direct the trustees to dispose of the income at the end of each year or at any time within the year. The beneficiaries, except Regina Marx, and the trustees, are the same individuals. It has suited the convenience of the parties, according to their needs, to let the trust income be retained by the trustees. The parties have stipulated that none of the trust income so retained by the trustees was "available" to any of the beneficiaries in the taxable years. The use of the term "available" in the stipulation can be regarded only in the sense that the income was not paid to the beneficiaries because they agreed to let the trustee hold it. It is another matter whether the trust income was legally available to the beneficiaries. It is a matter for legal construction, also, whether the trust income was "currently distributable" to the beneficiaries so as to be taxable to them within the meaning of section 161 (a) (2) and section 162 (b) where the testator did not expressly direct the trustees to distribute the income periodically at fixed times. The mere fact that the beneficiaries agreed that the income be held by the trustees can not change the application of the law with respect to taxation of the income in any year. Also, the beliefs of the interested parties do not control, but the terms of the will must govern in determination of the question involved. Cf. *Commissioner* v. *Guitar Trust, supra; Hubbell* v. *Burnet, supra.* The essential question is whether the beneficiaries had a legal right to receive accrued trust income at the end of each year in the absence of an express direction in the will that the trustees apply the trust income to the use of each beneficiary at the end of each year, as will be developed hereafter.

It is the right of the petitioners, beneficiaries, to receive the trust income at the end of each year, not the actual or constructive receipt of such income during the year, which fixes the liability for the tax thereon, as income "currently distributable" during the year under sections 161 (a) (2) and 162 (b), *supra.* In *Freuler* v. *Helvering*, 291 U. S. 35, it is stated, "The test of taxability to the beneficiary is not receipt of income but the right to receive it." See also, *Mary Clark de Brabant*, 34 B. T. A. 951, 955. This brings us to the ques-

tion of ownership of the income in question. The testator directed the trustees to divide the principal of the trust into three equal shares (physical division being left in the discretion of the trustees except when necessary to make a distribution of principal, article IV, paragraph II), and to *dispose* of income by applying the income of each share set apart for each beneficiary, to the use of the beneficiary for life, or, in the case of Leonard Marx, until he attained thirty years of age. The trustees opened separate income accounts in the name of each beneficiary in the "Estates General Ledger" and at the end of each year credited to each account the one-third of the annual, net trust income, plus one-third of total capital profits and minus one-third of capital losses. (Cf. *Nellie S. Alexander*, 36 B. T. A. 929, on the matter of deduction of capital losses from distributable trust income.) Thus, it is clear that the trustees kept each year's net income separate from the principal of the trust or trusts and each beneficiary could ascertain how much of the trust income was available for distribution at the end of each year. The income was available for the use of the beneficiaries; it could be assigned without affecting the trust; it could be reached by their creditors. It is also clear that each beneficiary had a vested, beneficial interest in the income of one-third of the trust property. Reference to decisions of the courts of New York, as well as the terms of the will, support the conclusion, which is made, that ownership of the net income of one-third of the trust property vested in each beneficiary upon its being received by the trustees. This conclusion is dictated, further, by the New York law under which a postponement of such vesting for however short a time would offend the statute against unlawful accommulations. Each beneficiary was the owner of the entire income and it was available to him and he was entitled to have it applied to his use by having it paid over as it accrued. *In re Keogh*, 112 App. Div. 414; 98 N. Y. S. 433; *Smith v. Parsons*, 146 N. Y. 116; 40 N. E. 736; *Scharmann et al.*, *supra; Gasquet v. Pollock*, *supra; Curtis v. Curtis*, 185 App. Div. 391; *Hendricks v. Hendricks*, *supra.* The gift of income to the beneficiaries was not just so much of the net income as the trustees determined to apply. Cf. *New York Trust Co. v. Black*, 164 N. Y. S. 967; *Matter of Connolly*, 130 N. Y. S. 194; *Schmidt's Estate*, 240 N. Y. S. 206.

It has been established that "the one who is to receive the income as the owner of the beneficial interest is to pay the tax" under the provisions of the revenue acts imposing upon the beneficiary of a trust the liability for the tax upon the income distributable currently to the beneficiary. Also, it has been held that the term "income currently distributable to the beneficiary" is merely descriptive of the one entitled to the beneficial interest. *Blair v. Commissioner*, 300 U. S. 5. If the trust income is the property of the equitable life tenant at the

moment it is earned, then the liability for the tax is on the equitable life tenant and not on the trustees, *Sewell* v. *United States* (Ct. Cls.), 19 Fed. Supp. 657; whether paid over to him or not, *Lynchburg Trust & Savings Bank* v. *Commissioner*, 68 Fed. (2d) 356.

There is no question involved here whether the trustees could lawfully hold the trust income as it was received in each year for future distribution to the beneficiaries. As far as can be discovered from review of New York court decisions referred to by the parties, the temporary holding of the trust income by the trustees was not illegal under New York law in the absence of any direction in the will to accumulate income contrary to law. As stated in Bogert, Trusts and Trustees (1935), vol. I, p. 665, par. 217:

A cestui cannot by his consent validate a provision for accumulation which violates the statute and concerning which another party has a right to object; but, if there is no accumulation clause in the trust instrument, a cestui and trustee may agree that the trustee shall retain for a time income which he is under a duty to pay over or apply. This latter type of agreement is in effect creating a new trust by agreement between cestui and trustee.

But the apparent agreement between the parties in these proceedings, as cestuis and trustees, in their respective capacities, effecting a new trust of the undistributed income does not affect or alter the determination of the main question in these proceedings. Each beneficiary owned his share of the trust income as it was received by the trustees and the trustees were in effect applying such income to the use of each beneficiary by holding it in trust just as effectually as though it were paid over to each beneficiary. Cf. *Ordway* v. *Wilcutts*, 12 Fed. (2d) 105. The procedure adopted voluntarily was equivalent to the beneficiaries receiving the income at the end of each year and paying it over to the trustees in a new trust or trusts. Further, the trustees' oral declaration that they held one-third of net trust income, personal property *in praesenti*, for each beneficiary creates express trusts for the three beneficiaries and the beneficial interest is considered as vested in each cestui. *Rollestone* v. *National Bank of Commerce*, 299 Mo. 57; 252 S. W. 394. Under such circumstances the trust income held is not taxable to the trustees. Cf. *Lynchburg Trust & Savings Bank* v. *Commissioner*, *supra*.

It is held that the net trust income is taxable to each petitioner, Leonard, Emily, and Regina Marx, for the taxable years under the provisions of section 162 (b), *supra*. Respondent is sustained on this issue.

*Issue 2.*—The second issue relates to the fiduciaries and affects Docket No. 88594. Respondent has construed the third article of the will as creating a single trust for three beneficiaries. Petitioners contend that the will creates three separate trusts. We believe the evidence shows that the trustees have construed the will as creating

three trusts, the fact that income tax returns for 1932 and 1933 were made originally as for one trust, to the contrary notwithstanding. It is stipulated that the attorney for the trustees became aware of the procedure of filing one return on the basis of one trust for the first time in October 1934, and that thereafter, upon advice of counsel, the trustees filed three amended returns for three trusts for each taxable year. On the basis of three trusts the total income tax for 1932 was less than the tax computed on the basis of one trust and, simultaneously, the trustees filed a claim for refund of part of the taxes paid on the original return filed for 1932. For 1933, the tax liability on the basis of three trusts was more than on the basis of one trust, and simultaneously the trustees paid an additional tax. However, when the respondent indicated an intention to tax the trust income for 1933 to the beneficiaries (issue 1), the trustees, on February 14, 1936, filed a claim for refund of taxes paid by them on trust income. It appears, therefore, that the question involved in issue 2 is important to the petitioners, because, if three trusts were created, income taxes on them, as fiduciaries, are less than if there was one trust. It is noted that the petition of the fiduciaries, Docket No. 88594, is from a deficiency for the year 1933 only.

Whether or not an instrument creates one or several trusts depends on the testator's or donor's intention as derived from the terms expressed in the instrument. *Huntington National Bank* v. *Commissioner*, 90 Fed. (2d) 876. The terms of the will of Joseph Marx leave little room to doubt that he intended to create by the third article of his will three separate trusts for the benefit each of his wife and two children. The residuary estate was conveyed to the trustees with the direction "to divide the principal thereof into three equal shares, one for my said wife, Regina Marx, one for my son, Leonard M. Marx, and one for my daughter, Emily Marx, and to dispose of the principal and income of said shares as follows: * * *" Thereafter, the testator refers to each share as "the share set apart for" the named beneficiary for her or his use, during life, (or, in the case of the son, until he is thirty years old). The gift of income to each beneficiary is the "income of the share set apart", and not one-third of the income of a trust. In the fourth article the trustees are authorized, in their discretion, to "keep the trust property in one or more consolidated *funds* in which the *separate shares* shall have undivided interests." (Italics ours.) That is, the trustees are not required to make physical division of the trust funds, except when necessary for distribution of principal, and if the separate shares are kept in one fund *in solido*, each beneficiary has an undivided interest in the fund. The term "trust funds" is used in the will rather than "trust fund" and the term "trust" as opposed to "trusts" does not appear except that the residuary estate is given "in trust" to

be divided into three equal shares. Each undivided interest runs for a separate and distinct period, i. e., the life of each beneficiary, or, in the case of the son, until he is 30 years old. It seems reasonable to construe the will as showing an intent in the testator to create three trusts running for each single life. Turning to the limitations over of the remainders, each share or trust is kept separate and apart so as to dispose of and terminate each trust in and of itself. The testator directed that at the end of each life estate in each share "the principal thereof" shall be distributed by the trustees to designated remaindermen. The principal of the share set apart for Regina Marx is to be divided into two parts upon her death and final disposition of the principal of each part of the one share is provided. Final disposition of each of the other shares is provided for in similar fashion. In brief, the provisions for disposition of the remainders over follow the same division of three separate trusts, prescribing the ultimate disposition of each *principal*, separately, to designated remaindermen. This is inconsistent with the idea of a single trust.

The difficulty presented is that the trustees did not make any physical division of the trust funds into three separate principals. The parties have stipulated that the nature of the trust funds or property:

* * * was such as to make physical segregation of the assets inadvisable and in some cases impossible. Therefore, the trustees did not separate the property received by them pursuant to said Article "Third" of the will into three separate and distinct parts but kept said property intact.

It is evident that actual separation of the property received by the trustees into three shares was not necessary because the interests in the accruing income of each share are equal and several. However, physical separation of assets is not indispensable or prerequisite to the existence of several trusts. A trust may be created in any property which is of value, real or personal, legal or equitable. Perry on Trusts (7th Ed.) pars. 67, 68, pp. 52, 53. An undivided interest in property may constitute the corpus of a trust. *United States Trust Co.* v. *Commissioner*, 296 U. S. 481. "Where there is an intention to create separate trusts, the fact that 'the trusts' are 'kept in one fund' does not necessarily defeat the intention and require the conclusion that there is but a single trust." *In re Colegrove's Estate*, 221 N. Y. 455, 459; 117 N. E. 813; *Vanderpoel* v. *Loew*, 112 N. Y. 167, 180; 19 N. E. 481, 484.

It is concluded that the shares and interests of Regina, Emily, and Leonard Marx are several, although the trust property was undivided, which was unnecessary. There is a separate and distinct trust as to each share in which each beneficiary had an equitable life estate; an undivided one-third interest. As pointed out in *Commissioner*

v. *McIlvaine*, 78 Fed. (2d) 787, the matter that gives concern is income rather than physical possession of the property that produces it, and "the receipt of the entire income (by the trustees) will be deemed in equity the receipt of it for the three undivided trust estates." It follows that the trustees' tax liability must be determined on the basis of three trusts, i. e., income of the trust property, where it is properly taxable to the trustees (see issue 1), is taxable to three trusts and not to a single trust, notwithstanding the property was not segregated. On this issue, petitioners are sustained.

Respondent calls attention to several cases where it has been held that a single trust was created: *Johnson* v. *United States*, 65 Ct. Cls. 285; certiorari denied, 278 U. S. 611; *John J. Rauers et al., Trustees*, 28 B. T. A. 516; *State Savings Loan & Trust Co.* v. *Commissioner*, 63 Fed. (2d) 482; *Margaret B. Sparrow*, 18 B. T. A. 1; *Langford Investment Co., Trustee*, 28 B. T. A. 222. We do not think those cases are controlling here. Each case must be decided with reference to the particular trust instrument involved. This proceeding comes clearly within the general principles discussed in *United States Trust Co.* v. *Commissioner, supra*, which is controlling here.

*Issue 3.*—The third issue arises out of the deficiency determined in Docket No. 88595. The material provisions of the Marian House trust executed by Emily Marx, petitioner, are set forth in the findings of fact. At the outset, it is pointed out that the question presented is whether all or part of the sum of $3,500 paid to the guardian of Marian House pursuant to the new trust, on December 30, 1933, is taxable to the settlor, Emily Marx, or to the guardian of Marian House. Petitioner errs in arguing that the stipulation of facts forecloses any consideration by this Board of the question in its entirety. Petitioner would circumscribe the question in a manner not warranted by anything in the stipulation of facts. The parties may not limit the jurisdiction of this Board by any manner of posing a question in their briefs. Petitioner's counsel errs in endeavoring so to do.

Petitioner's theory is that she assigned *property* to the Marian House trustee, consisting of part of her equitable interest in the Joseph Marx trust to the extent of $3,500 per year. If this theory of petitioner is correct, a point we do not now decide, then only that part of the sum of $3,500 which in fact accrued after the date of execution of the assignment is taxable to the assignee. Income accruing to the interest of Emily Marx in the Joseph Marx trust prior to December 15, 1933, is clearly the income of Emily Marx (see issue 1, above), for which she is liable for tax notwithstanding the later assignment thereof. The cases controlling on this phase of the question are *Edith H. Blaney*, 13 B. T. A. 1315; *Robert G. Dodge*, 29 B. T. A. 632; *William Ernest Seatree*, 25 B. T. A. 396. The parties have stipulated that the net income of the Joseph Marx trust for Emily

Marx was $6,763.22 for the year ending December 31, 1933. The parties have presented no facts, stipulated or otherwise, to show what part of said income accrued or was received by the Joseph Marx trust trustees prior to December 15, 1933. Lacking evidence to prove that any part of the sum of $3,500 was received by the trustees of the Joseph Marx trust after December 15, it is held that the petitioner, Emily Marx, is taxable upon the entire amount, in spite of the subsequent assignment thereof.

Upon this conclusion, there remains no further question in this proceeding for decision with respect to the effect of the assignment of December 15 on petitioner's income tax liability for the year 1933.

> *Decision will be entered under Rule 50 in Docket Nos. 83831, 83832, 88593, 88594, and 88595. Decision will be entered for the respondent in Docket No. 83833.*