Frank E. Meier v. Commissioner.
Meier v. Commissioner
Docket No. 3207.
United States Tax Court
1945 Tax Ct. Memo LEXIS 281; 4 T.C.M. (CCH) 268; T.C.M. (RIA) 45081; February 28, 1945
John C. Veatch, Esq., Yeon Bldg., Portland, Ore., for the petitioner. Earl C. Crouter, Esq., for the respondent. MELLOTT
Memorandum Opinion MELLOTT, Judge: Petitioner, a resident of Oregon, filing his income tax returns on a cash basis with the collector of internal revenue for that district, assails a deficiency in income tax for the calendar year 1940 in the amount of $6,880.18 and claims he has made an overpayment in tax. Respondent denies this although he concedes that the deficiency determined by him is excessive. [The Facts] There is no dispute as to the facts. *282 Each of the parties has vacillated in his treatment of the income from three trusts, referred to herein as Trusts numbered 2, 5 and 3, the trust instruments being attached to the amended petition as Exhibits B, C and D, respectively. The issues as framed in the original pleadings arose from respondent's inclusion in gross income of $18,870.88, consisting of the difference between the total income from Trusts 2 and 5 and the amount reported by petitioner from this source. Respondent now concedes that under Spreckels v. Commissioner, 101 Fed. (2d) 721; Roebling v. Commissioner, 78 Fed. (2d) 444; Commissioner v. Clark, 134 Fed. (2d) 159 and other cases $14,385.71 - the accumulated income distributed to petitioner upon termination of the two trusts on September 11, 1940 - of the above amount was improperly included in gross income. Petitioner concedes that he erroneously refrained from including in gross income $4,485.17. The details are summarized in the following table: Trust No. 2
Trust No. 5
Total
Total income in 1940
$21,935.15
$3,360.10
$25,295.25
Distributed to Petitioner prior to 9/11/1940
9,320.29
1,589.25
10,909.54
Included by Petitioner in his return of income
5,232.44
1,191.93
6,424.37
Balance to be included in income
4,087.85
397.32
4,485.17
Distributed to petitioner on termination of trusts
12,614.86
1,770.85
14,385.71
*283 By an amended petition, filed with leave of court on September 4, 1944, petitioner raises an issue involving the income of Trust No. 3. Stated generally it is that he had erred in including in his gross income $10,884.97 as the income of that trust when in fact only the sum of $5,277.01 was distributed to him during the taxable year. The $10,884.97 consists of dividends and interest, shown as the first two items in the following schedule of income of this trust: Dividends, Meier & Frank Co.
$10,880.00
Interest
4.97
Net short-term capital gains
157.82
Net long-term capital gains
2,307.28
Total
$13,350.07
Trust No. 3 was created in 1931 by petitioner's mother for his sole benefit and does not terminate until 1945. Under the terms of this trust the grantor transferred and set over to the trustees 2,000 shares of capital stock of Meier & Frank Co., a corporation. Paragraph 1 of the trust instrument authorizes the trustees to collect all the income and dividends from the stock and - "* * * after paying therefrom any taxes or other public charges and necessary expenses for conducting this, my said trust, to pay the residue thereof hereinafter called the 'net *284 income' to my beloved son, FRANK EISING MEIER, as often as any dividends are declared and paid upon and from said stock up to the time my said son, FRANK EISING MEIER, shall have attained the age of Thirty-five (35) years, and if and when my said son, FRANK EISING MEIER, shall have attained the age of Thirty-five (35) years, then, and in such event, my said trustees shall turn over and deliver to my said son, FRANK EISING MEIER, all of said capital stock * * *." The trust instrument also provides for various contingencies, one of which is that in the event the primary beneficiary shall die before reaching the age of 35 years, leaving a wife and children surviving him, one-tenth of the stock constituting the trust corpus is to be paid to his widow and the remaining nine-tenths thereof is to be held in trust for the benefit of his children, to be administered for their benefit pursuant to the terms of the trust, until each child reaches the age of 25 years. The trust instrument further provides: "Any person acting as trustee for the said Frank Eising Meier under the provisions hereof, shall have full power to collect all dividends declared on any or all of said capital stock and *285 to expend such portion thereof as may be necessary for the maintenance, education, nurture and support of said Frank Eising Meier (or in the event of his decease, then for the support, maintenance, education and nurture of such children of Frank Eising Meier as may survive him.) "Any person acting as trustee for the said Frank Eising Meier under the provisions hereof, shall have the full power and right to sell any or all of said capital stock for such price and upon such terms as to my said trustees shall seem proper and the full power to invest and reinvest any and all moneys coming into the hands of my said trustees under the terms of this trust in such manner and upon such security and for such time as to my said trustees shall seem safe and proper. "Any person acting as trustee for said Frank Eising Meier under the provisions hereof, shall have the right to pay over unto the said Frank Eising Meier any portion of the income received from any property in the hands of said trustees and held under the terms of this trust, at such times and in such amounts as to my said trustees shall seem best * * *, * * * any trustee shall have the right to pay any and all life insurance premiums *286 on all policies issued upon the life of said Frank Eising Meier, and any and all charges, assessments, taxes or expenses which may be levied or assessed against the property held in trust, or any taxes of any kind whatsoever payable by the said Frank Eising Meier from any moneys in the hands of said trustees and belonging to this trust * * *." In its fiduciary return, Form 1041, filed for the year 1940, the trustees of Trust No. 3 - a brother and sister of the beneficiary were the trustees but the brother attended to all the details of administering the trust - reported (line 16) as income distributable to the beneficiary the sum of $10,884.97. In Schedule "A" of the return, bearing the heading "Beneficiaries' shares of income and credits", the same amount was reported as Frank E. Meier's distributable share of the taxable income. In petitioner's income tax return for the year 1940 he reported the receipt of $10,884.97, consisting of the dividends and interest as shown above. Section 161 of the Internal Revenue Code imposes upon estates or trusts a tax comparable to that imposed upon individuals. Subsection (a) thereof requires inclusion in the returns *287 of the estate or trust of: (1) income accumulated in trust; (2) income which is to be distributed currently by the fiduciary to the beneficiaries; (3) income received by estates of deceased persons during administration; and (4) income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated. Section 162 provides for certain deductions. Subsection (b) thereof authorizes deduction of the amount of trust income which is to be distributed currently by the fiduciary to the beneficiaries; "but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not." Subsection (c) allows a deduction with respect to trust income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, where the property is paid or credited to the beneficiary within the taxable year. However, there is a further condition in that subsection that "the amount so allowed as a deduction shall be included in computing the net income of the beneficiary." The parties differ as to whether the dividend income was currently distributable to petitioner under *288 the terms of the trust instrument, and, therefore, taxable to him, or whether it was income as to which the trustees had discretionary powers of distribution, in which event, petitioner would be taxable only on the amount distributed to him during the taxable year. The question is perplexing. Decided cases furnish but a modicum of assistance. Petitioner correctly points out that the language used in the trust instrument is to be carefully weighed and a meaning given to each part consistent with the rest, if that can be done Crutcher v. Joyce, 134 Fed. (2d) 809; and, where there is an apparent conflict between the provisions, the dominant and controlling purpose of the settlor should be given great weight Smith v. Commissioner, 131 Fed. (2d) 254. This advances us but slightly in our search for the right answer, however; for the dominant purpose of the settlor is enshrouded in the same obscurity as the language used. A state statute, (section 716) forming a part of Chapter II Title IX Oregon Laws dealing with the "General Principles of Evidence," is relied upon by petitioner. It and succeeding sections, collectively incorporate into the state statutes well-established *289 principles to be applied in construing written instruments, section 717 e.g. providing that the "circumstances under which [an instrument] was made, including the situation of the subject of the instrument and the parties" may be shown while under section 718, terms, other than of a local or technical nature, are "presumed to have been used in their primary and general acceptation." Laying to one side the question of the applicability of state rules of evidence (see section 1111, I.R.C.) it may be pointed out that no question arose at the trial on the admissibility of evidence. Petitioner's witnesses, consisting only of the active trustee and the bookkeeper who had charge of the accounts, were permitted to testify, without objection, that the trustees interpreted the trust as being "completely discretionary * * * whether * * * [they] authorized expenditure or not." General rules for the construction of an ambiguous instrument, as laid down by the courts, must be applied. Somewhat paradoxically, both parties urge that the instrument should be construed as the interested parties, i.e. the active trustee and the beneficiary, have heretofore construed it. *290 In this connection petitioner relies upon the quotation from the testimony of the active trustee set out in the preceding paragraph. Respondent points to the fact that in the returns, both of petitioner and of the fiduciary, each has always assumed and reported that the dividend income was distributable to the beneficiary and no contention to the contrary was ever made until the amended petition was filed in this case. Under the circumstances, therefore, the treatment of the dividend income by the interested parties does not appear to have been consistent enough to tip the scales either way. Another test suggested by petitioner is whether, under state law, [1] the trustee had the power to withhold from the beneficiary any part of the trust income. Citing the state statute referred to above (Sec. 716 Oregon Laws), which provides that "the intention of the parties is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former," he asserts that the general provision is the one directing that the income be paid to the beneficiary as received while the particular one gives the trustees "power to use their judgment as to *291 such payments." Petitioner therefore insists, although citing no authorities in support of that view, that under the law of Oregon he had no right to compel the trustees to turn over to him all of the income of the trust. Whether petitioner has correctly characterized the provision requiring the payment of the dividends to him "as often as any * * * are declared and paid" as the general, rather than the particular, provision of the trust instrument need not be decided. It may appropriately be pointed out, however, that the provision giving the trustees the right to pay over to the beneficiary "any portion of the income received from any property * * * held under the terms of the trust, at such times and in such amounts" as should seem best to them is also quite general in its nature. But however that may be we should endeavor to ascertain, by all proper means, the intention of the grantor as it may be gleaned from the facts and circumstances before us. The petitioner's father had previously and at a time when petitioner *292 was 16 years of age, created a trust for his benefit (see Trust No. 2 attached to the petition as Exhibit B), transferring to petitioner's mother, the settlor of the trust with which we are now concerned, 240 shares of the stock of Meier & Frank Co. to be held by her in trust, the income to be applied for petitioner's maintenance, education and support. Shortly before petitioner became 21 years of age the mother created this trust. She, it may be assumed, was aware of his needs, of the amount being used and required for his maintenance, and also of the fact that she - or her older son in the event she had ceased to be the trustee - had the absolute and uncontrolled discretion under the father's trust of applying the income as she should "deem advisable and best for the interests of * * *" petitioner. It is not unreasonable to suppose that she, as a normal mother, wished her son to have a substantial income to do with as he pleased after attaining his majority, which well may have been the motivating factor impelling her to direct that all of the dividends, except taxes, public charges and necessary expenses, be paid over to him as often as any dividends are declared and paid. In any *293 event the language is mandatory; and it is difficult to believe that she deliberately chose to nullify it by a later provision. What, then, was the purpose of the later one? Respondent suggests that the answer may be found by examining the several provisions appearing between the two clauses which cause the difficulty. One authorizes the trustee to sell and invest and reinvest the proceeds. Respondent states it is obvious those powers had been exercised; for capital gains were realized by the trust in the taxable years. Pointing out that the provision authorizing the trustee to exercise his discretion applies to "any portion of the income received from any property and held under the terms of this trust" whereas the earlier provision applies specifically only to dividends, he concludes that the latter language should be construed as applying only to income other than dividends. This, incidentally, seems to be precisely the construction given by the interested parties in the preparation of their returns. We do not agree wholly with respondent's premise or the reasoning by which his conclusion is reached. Yet we think, for reasons which will now be set out, that the parties should *294 be left where they have placed themselves and that no finding of overpayment should be made. The facts of the instant proceeding are quite similar to those in Leo A. Balzereit, et al., 38 B.T.A. 345, affd., 107 Fed. (2d) 1008. Petitioners in that proceeding were guardians of George Henry Balzereit, a mentally incompetent who was the life beneficiary of a testamentary trust set up by his father. The corpus of the trust consisted of shares of stock and other property. The will provided that "All dividends received on said stock payable after my death shall pass to the said George Henry Balzereit as income." Approximately $30,000 dividend income was received by the trust during the taxable year and the only question was whether it was taxable to the trust or to the beneficiary. The trustees took the position that they were not mandatorily required to distribute the trust income, and urged that they had discretionary powers with respect thereto. In support of their contention they pointed to the language of the will creating the trust, which authorized them to "* * * collect the income from said stock or the proceeds thereof, and, after deducting the expenses *295 of the trust, pay the net income to, or, in the discretion of the trustees, apply the said net income to the maintenance and support of my son, George Henry Balzereit, for and during the term of his natural life." We held that the income was taxable to the beneficiary, pointing out that "The trust instrument * * * contains no provisions for the accumulation of income." That being so we held that the income should be taxed to the beneficiary, whether distributed within the taxable year or not. See also Leonard Marx, 39 B.T.A. 537; Mary Pyne Filley, 45 B.T.A. 826. The present trust instrument contains no provision authorizing the trustee to accumulate any portion of the dividends. They are all to be paid over as often as declared and paid. Not only is this the specific direction of the trust instrument but the language immediately following directing the trustee to "turn over and deliver to * * * [the beneficiary] all of said capital stock" upon termination of the trust implies that there will not be any accumulated and withheld dividends to be turned over. Our best judgment is that the dividend income of $10,880 received by the trust during the taxable *296 year was income currently distributable by the trust to petitioner, the beneficiary, and that under the provisions of section 161 (a) (2), I.R.C., supra, he properly included this amount in his gross income. The item of $4.97, representing interest, was income which the trustees had discretionary power either to distribute or to accumulate. It was deducted by the trust in computing its taxable net income and was reported by petitioner in his return as "Income from Fiduciaries." During the year the trustees distributed to petitioner $5,277.01. No proof has been submitted showing that the item of interest was not included therein. Under the circumstances it must be held that the respondent committed no error in including the $4.97 in petitioner's gross income. Section 162 (c), I.R.C.
Decision will be entered under Rule 50. Footnotes
1. Commissioner v. Lewis, 141 Fed. (2d) 221; Johnston v. Helvering, 141 Fed. (2d) 208; Freuler v. Helvering, 291 U.S. 35↩.